IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Peter B., Jimmy "Chip" E. and Michelle M., | Civil Action No. 6:10-767-RBH-BHH |
| Plaintiffs, | |
| vs. | |
| Marshall C. Sanford, Emma Forkner, Beverly Buscemi, Kelly Floyd, The South Carolina Department of Health and Human Services and The South Carolina Department of Disabilities and Special Needs, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendants. | |

This matter is before the Court on the defendant Marshall Sanford's motion to dismiss [Doc.11] pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6). In their Amended Complaint, the plaintiffs would allege violations of Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973 (Section 54); the Medicaid Act, 42 U.S.C. § 1396; and 42 U.S.C. §§ 1983, 1985, 1988. The original Complaint included only claims pursuant to the ADA, the Rehabilitation Act, and Section 1983. [Doc. 1] The Defendant Sanford has been sued in both his individual and official capacities only for prospective relief." [51-1, Amend. Compl.] The defendant is the Governor of the State of South Carolina.

In addition to the full briefing of the parties, a hearing on the motion was held before the Court, on September 28, 2010. As with the motion for injunctive relief, based upon the

parties' respective representations at both hearing and on motion, the Court has allowed this case some opportunity to be resolved through changed circumstances at the state level. [Doc. 28.] Accordingly, there has been some delay. It has become apparent over time that a resolution is now in order.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## **BACKGROUND**

The plaintiffs are three individuals who have varying degrees of severe mental retardation and/or related disabilities. Peter B. has mental retardation, hydrocephalus, diabetes and coronary heart disease. Chip E. has normal intelligence and severe cerebral palsy and a speech disorder. Michelle M. has autism, profound mental retardation, cerebral palsy, a bipolar disorder and is unable to speak.

The defendant South Carolina Department of Disabilities and Special Needs ("DDSN") provides services to individuals, like the plaintiffs, with developmental disabilities such as mental retardation and autism, and to some individuals with head and spinal cord injuries. *See* S.C. Code § 44-21-10 *et seq*. The vast majority of DDSN's funding derives from the federal Medicaid program, passed through to DDSN from the state Medicaid agency, defendant South Carolina Department of Health and Human Services ("DHHS"). Medicaid funds are used by both of these defendants to provide services to individuals in long-term institutions and to enable individuals to live in the community with appropriate

supports. *See generally* 42 U.S.C. §§ 1396a & 1396n(c).

The plaintiffs contend that, through their administration of the Medicaid program, the defendants, including Governor Sanford, in various ways have reduced the plaintiffs' access to certain in-home and community based personal health and wellness services. The plaintiffs contend that such diminution in services will force them out of their current homes and into institutional settings, in violation of the mandate, expressed in *Olmstead v. v. L.C. ex rel. Zimring*, 527 U.S. 538 (1999), that such individuals are discriminated against when their ability to be integrated into their communities is undermined.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted).

## DISCUSSION

I.  **Sovereign Immunity and *Ex parte Young***

The defendant first argues that he should be dismissed from the case because he has no special relation to the administration of Medicaid by DHHS or DDSN. Said differently, the defendant contends that whatever reduction in services has occurred, he is not sufficiently accountable for the decision to continue as a defendant in this case. This

3

argument starts with some discussion of sovereign immunity. The Eleventh Amendment prohibits a citizen from suing a state for monetary damages in federal court without its consent. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Savs. Bank*, 527 U.S. 627, 634-35 (1999). However, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority,'" namely its § 5 Fourteenth Amendment powers. *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). This and other circuit courts of appeal have agreed that the ADA and the Rehabilitation Act both constitute an abrogation and/or a waiver[1] of sovereign immunity. *See Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474 (4th Cir. 2005); *Miranda B. v. Kitzhaber*, 328 F.3d 1181 (9th Cir. 2003).

Notwithstanding, it appears to the Court, that the issue of whether Defendant Sanford himself, as a state official, can be sued, in that capacity, turns on an application of the United States Supreme Court's seminal decision, in *Ex parte Young*, 209 U.S. 123 (1908). *See Miranda*, 328 F.3d at 1187; *Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir.2002). Under *Ex parte Young*, it is well-settled, that suit may be brought for *injunctive or declaratory relief* against state officials, like Defendant Sanford, for violations of federal law. *See Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329-330 (4th Cir. 2001).

---

[1] Under the Rehabilitation Act, a state waives its immunity from suit by accepting federal funds. *Miranda*, 328 F.3d at 1186.

In spite of the abrogating effect of the ADA and the Rehabilitation Act, an appeal to *Ex parte Young* is necessary because Title II prohibits only "public entities" from discriminating against individuals because of a disability, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act prohibits only "a program or activity receiving Federal financial assistance" from denying benefits to individuals because of a disability, 29 U.S.C. § 794(a). Neither the ADA's definition of "public entity," 42 U.S.C. § 12131(1), nor the Rehabilitation Act's definition of "program or activity," 29 U.S.C. § 794(b), includes individuals within their scope. Accordingly, courts have concluded: "[A]n official who violates Title II of the ADA does not represent 'the state' for purposes of the Eleventh Amendment, yet he or she nevertheless may be held responsible in an official capacity for violating Title II, which by its terms applies only to 'public entit[ies].'"[2] *Carten*, 282 F.3d at 396.

Under *Ex parte Young*, in "making an officer of a state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157. Specifically, *Ex parte Young* requires a "special relation" between the state official sued and the challenged statute, and "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law."[3] *Waste Mgmt. Holdings*, 252 F.3d at 331 (quoting *Children's Healthcare is a Legal*

---

[2] The Court would admit that the interplay between the abrogation of the state's immunity by the ADA and the concomitant resort to *Ex parte Young,* typically reserved to circumvent sovereign immunity, has been less than clear under the pertinent decisions.

[3] In order to survive a motion to dismiss on an *Ex parte Young* claim, it is typically sufficient that the plaintiff has alleged facts that, if proven, would violate federal law and that the requested

5

*Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)).

The defendant rightly emphasizes that the general enforcement responsibilities of a governor do not qualify as a "special relation" sufficient to permit suit. *See, e.g., Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d at 331 (dismissing claim against governor because although he was "under a general duty to enforce the laws of Virginia by virtue of his position as the top official of the state's executive branch, he lacked a specific duty to enforce the challenged statutes); *Young v. Hawaii*, 548 F.Supp.2d 1151, 1164 (D. Haw. 2008) (holding that allegations of "general oversight of State laws are insufficient to establish the required nexus between . . . the Governor" and the enforcement of the challenged statute); *Harris v. Bush*, 106 F.Supp.2d 1272 (N.D. Fla. 2000) (ruling that governor's general constitutional authority to enforce the laws is insufficient to make him a proper party to a lawsuit challenging constitutionality of a law).

Nearly all of the plaintiffs' allegations concerning Defendant Sanford fall into this category. The plaintiffs' Amended Complaint includes the following averments relevant to Defendant Sanford. It alleges that an Attorney General's Opinion made the Governor aware of his appointment and removal authority over local DSN boards. (Am. Compl. ¶ 15.) Additionally, the plaintiffs claim that since 2003 Governor Sanford and his Chiefs of Staff

---

relief is prospective. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645-46 (2002) ("[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." (citing *Coeur d'Alene*, 521 U.S. at 281, 117 S.Ct. 2028)). The Court, however, may look to the "special relation" requirement to dismiss a claim where "the relationship between the state official sought to be enjoined and the enforcement of the state statute is significantly attenuated." *South Carolina Wildlife Federation v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008).

have been aware of various problems at DDSN and that he has failed to correct these problems. (Am. Compl. ¶¶ 16-20.) The plaintiffs also allege that Governor Sanford has failed to appoint members to advisory boards to DDSN and that the Governor's Chief of Staff participated in an August 2009 meeting regarding anticipated service reductions by DDSN. (Am. Compl. ¶¶ 19, 70-72.) As the above-cited cases indicate, these are precisely the types of oversight and general enforcement duties which do not qualify as creating any special relation. Other courts have agreed that appointment power over agency boards is insufficient, even coupled with general enforcement duties and veto/approval powers. *See, e.g., D.G. ex rel. Stricklin v. Henry*, 591 F. Supp. 2d 1186, 1189 (N.D. Okla. 2008) (observing that "the Governor has the power to appoint members of the OCHS and to name its chairman. However, the Governor is in no sense responsible for actually administering the foster care system."); *Kelly v. Burks*, 414 F.Supp.2d 681, 686 (E.D. Ky., February 07, 2006) ("The power to make appointments to the entity that acted unconstitutionally is insufficient to demonstrate that a state official falls within the exception recognized in Ex parte Young."); *LensCrafters, Inc. v. Sundquist*, 184 F. Supp. 2d 753, 757-59 (M.D. Tenn.2002) (dismissing claim against Governor of Tennessee when the power to make appointments to board is the only nexus between Governor and the challenged action by the board); *Sweat v. Hull*, 200 F. Supp. 2d 1162, 1175-76 (D. Ariz. 2001) (dismissing claim against Governor who signed allegedly unconstitutional bill into law and appointed the cabinet official responsible for enforcing that law).

"'The mere fact that a governor is under a general duty to enforce state laws does

7

not make him a proper defendant in every action attacking the constitutionality of a state statute.'" *Waste Management*, 252 F.3d at 331 (quoting *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir.1979)). It is an issue of "proximity to and responsibility for" the action. *South Carolina Wildlife Federation v. Limehouse*, 549 F.3d 324, (4th Cir. 2008) (involving the Director of the SCDOT who had specific directives under state and federal law regarding implementation of the National Environmental Policy Act). The Fourth Circuit, in *Lytle v. Griffith*, 240 F.3d 404, 410 (4th Cir. 2001), outlined a two-step query: (1) What is the Governor's connection, if any, to the enforcement of the challenged anti-loitering statute? and (2) If there is a connection, is it sufficient to implicate the exception to sovereign immunity found in *Ex parte Young*? *Id*. The relation of Governor Sanford, in this case, is neither directed in any particular way by statute, as far as the Court has been shown, nor has the Amended Complaint characterized his limited duties of appointment and enforcement as very proximate to the decision of Defendant DHHS to amend the waiver, thereby capping the services, about which the plaintiffs now complain. The plaintiffs concede, indeed argue, that Defendant DHHS made the decision concerning reductions, not the Governor. (Pl. Resp. Mot. Dismiss at 11.) DHHS is the single entity responsible for administering Medicaid in this state. *See* S.C. Code Ann. § 44-6-30(1). Accordingly, DHHS alone can administer and supervise the State's Medicaid plan, and the Governor has no discretion over the plan's administration. *See* 42 CFR § 431.10(e). As discussed, the Governor's appointment duties related to that agency and its advisory boards do not make him specially accountable. Other courts have agreed, under nearly identical circumstances.

*See Gray Panthers of San Francisco v. Schwarzenegger*, 2009 WL 2880486, at *2-3 (N.D. Cal. Sept. 1, 2009) (dismissing Governor of California who had no direct enforcement over Medicaid cut because state agency was solely responsible for administration of Medicaid).

The plaintiffs' proposed Amended Complaint, however, also alleged that federal Medicaid funds provided by the American Recovery and Reinstatement Act of 2009 (ARRA) have been unlawfully diverted to a "rainy day fund." [Doc. 51-1at 2 ¶ 6, at 58, ¶ 41.) The Court initially considered those allegations as potentially of the sort which might begin to permit a view of the Governor's relation to the events as specially proximate. But, the undersigned, by way of separate Order, has concluded that the plaintiff does not have leave to add a claim under the ARRA. [Doc. 72.] Accordingly, the Court need not reach the effects of such allegations concerning diversion of funds to a rainy day account.

The defendant is also not subject to suit in his individual capacity. As discussed, Title II prohibits only "public entities" from discriminating against individuals because of a disability, 42 U.S.C. § 12132, and § 504 prohibits only "a program or activity receiving Federal financial assistance" from denying benefits to individuals because of a disability, 29 U.S.C. § 794(a). Accordingly, various courts have concluded that such restrictions bar any suit against state officials in their individual capacity. *See Brewer v. Wisconsin Bd. of Bar Examiners*, 270 Fed. Appx. 418, 419 (7th Cir. 2008) (holding that bar examiners could not be sued in individual capacities because the two statutes only authorize claims against public entities); *Baird v. Rose*, 192 F.3d 462, 471-72 (4th Cir. 1999); *Swaim v. Westchester Academy, Inc.,* 170 F. Supp. 2d 580, 583 (M.D.N.C. 2001) (dismissing Rehabilitation Act

claim against defendant because individuals could not be personally liable) (citing *Hiler v. Brown*, 177 F.3d 542, 545-47 (6th Cir. 1999)); *Hannah v. United States Air Force*, 2010 WL 128291 (D.S.C. January 13, 2010) (adopting Magistrate Judge's recommendation that "individual defendants . . . cannot be held liable under the ADA or the Rehabilitation Act in their individual capacities").

Accordingly, even if all of the allegations against Defendant Sanford in the Complaint are true, he still can not be liable pursuant to the ADA or the Rehabilitation Act, in either his official or individual capacities, as a matter of law.

**II.     Medicaid Act Claim**

The Court has recently given the plaintiffs leave to file an amended Complaint, which includes a Medicaid Act claim.  In that claim, the plaintiffs contend that the defendants violated 42 C.F.R. § 431.210 "by failing to provide notice complying with the clear mandates of that section by failing to provide legitimate reasons for attempting to reduce services and by failing to cite the specific regulations supporting the reduction of . . . waiver services."  [Doc. 51-1at 59.]   The plaintiffs also contend that their rights under 42 U.S.C. 1396, including reasonable promptness, sufficiency, reasonable standards, choice of provider, equal access and adequate payment rates, and assurance of protecting health and welfare and financial accountability, have been violated.

The Court believes, consistent with the above analysis, that, as a matter of law, Defendant Sanford has no legal responsibilities for the due process allegedly due, but not provided.  The *Ex parte Young* considerations should apply here with equal force.

Notwithstanding, this claim had not been pled at the time of the defendant's motion to dismiss, and, therefore, the matter is not properly before the undersigned. None of the parties have had occasion to brief it.[4] But, if the district court were to reach the matter, it would be the Court's recommendation that the Amended Complaint is insufficient to suggest any legal duty on the part of the defendant running towards the alleged violations. The principle recommendation, however, is that the issue ought not be considered because it cannot be characterized as having been, as of yet, implicated; in fact, as of this recommendation it was not formally a part of the lawsuit insofar as the Amended Complaint has not been filed.

## II. Section 1983 Claim

Finally, the defendant contends that the plaintiffs claims pursuant to 42 U.S.C. § 1983 are preempted by the comprehensive remedial schemes of the ADA and the Rehabilitation Act. Various circuit courts of appeals have agreed that the comprehensive remedial schemes of the ADA and the Rehabilitation Act bar identical claims made pursuant to Sections 1983 involving the same predicate incidents of discrimination. *See Vinson v.*

---

[4] Although the Court has made resort to the language of the Amended Complaint in its discussion above, the circumstances here, related to the Medicaid Act claim, are slightly different. First, the Medicaid Act claim is entirely new. In the same way, as will be discussed below, the new Section 1983 averments create an additional dimension to the previously pled claim. The averments from the Amended Complaint relied upon above, considered in the immunity discussion, do not fundamentally alter the analysis required and were originally and fully briefed by the parties. The Medicaid Act and Section 1983 claims, by contrast, implicate some matters not completely addressed. Second, a resort to those newly added averments, in the context of the immunity analysis, provided the fullest possible opportunity for the plaintiffs' claims to proceed. The opposite is true here. Recourse to the Amended Complaint concerning the Medicaid and Section 1983 claims, in the absence of briefing from the plaintiffs, might actually increase the chance of their dismissal. Thus, the Court has reached this admittedly, less than satisfactory, compromise.

*Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002); *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011-12 (8th Cir. 1999); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1530-31 (11th Cir. 1997). District courts of this circuit have followed suit, including the District of South Carolina. *See Jordan v. Bourcier* 2006 WL 783499, at *2-3 (D.S.C. March 24, 2006); *Randle v. Historic Columbia Foundation*, 2006 WL 2037488, at *4 (D.S.C. July 18, 2006) (dismissing plaintiffs § 1985(3) claim seeking to redress violations of Title VII and ADEA because those statutes provided comprehensive remedies); *see also Henderson v. Gilbert*, 2006 WL 1966797, at *1 (D. Md. July 10, 2006) ("A plaintiff may not state a claim under 42 U.S.C. §§ 1983 and 1985(3) for rights created by the ADA."); *Walker v. City of Salisbury*, 170 F.Supp.2d 541, 549 (D. Md.2001) (ruling that a "plaintiff may not . . . present in this Court a § 1983 cause of action based on an ADA claim arising by reason of his disability)*.*

While the Fourth Circuit has never directly addressed the effect of the ADA on Section 1983 claims, it did conclude that the ADEA's comprehensive schemed barred such a claim. *See Zombro v. Baltimore City Police Dept.*, 868 F.2d 1364, 1368 (4th Cir. 1989). This district has cited *Zombro* as strong indication of how the Fourth Circuit might view the effect of the ADA. *See Jordan*, 2006 WL 783499, at *2. This Court would be inclined to agree.

But, as an important exception to this rule, other courts have concluded that, where a plaintiffs' section 1983 claims are based on constitutional rights and not the actual substantive rights under the ADA, that remedial scheme does not act with preemptive force.

12

*See Pathways Psychosocial v. Town of Leonardtown, MD*, 223 F. Supp. 2d 699, 708 (D. Md. 2002) ("However, the preemption doctrine in *Alsbrook* forecloses § 1983 claims for violations of the ADA rather than, as here, claims for the deprivation of constitutional rights"); *Baumgardner v. County of Cook*, 108 F. Supp. 2d 1041, 1043 (N.D. Ill. 2000) (". . . . Congress did not intend for the ADA to foreclose private claims alleging constitutional violations . . . ."); *see also Yates ex rel. Estate of Yates v. Beck*, 2003 WL 22231260, at **4-5 (W.D.N.C. August 22, 2003). Accordingly, it seems doubtful that that portion of the plaintiffs' Section 1983 claim would be preempted.

The plaintiffs' amended Count Five (mis-styled as Four) speaks in both respects. It is based in part, and expressly so, on the substantive rights of the ADA and Rehabilitation Act. [Doc. 51-1 at 62, ¶¶ 66-67.] To that extent, it is preempted by the same and, therefore, is not actionable against the defendant Sanford. The plaintiffs "cannot bring a section 1983 claim against the [Governor] in [his] individual [or official] capacities when, as [the undersigned] earlier concluded, [they] could not do so directly under the ADA" or Rehabilitation Act. *Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir. 1999).

But, the amended Count Five also newly alleges various deprivations of due process related to the plaintiffs' eligibility hearings, in violation of the Fourth Amendment and the Supremacy Clause of the United States Constitution. *Id.* at 61-62. While these averments effectively borrow from rights established by the Medicaid Act, the United States Supreme Court has apparently concluded that that particular statutory scheme is not "sufficiently comprehensive to demonstrate a congressional intent to withdraw the private remedy of §

1983, " like the ADA. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 522 (1990).

But, more critically, the Court, again, believes itself limited in its ability to treat the issue because the motion did not address the new averments in the Amended Complaint related to constitutional issues of due process . As indicated, the Court cannot imagine, and the Amended Complaint does not allege, any basis to hold defendant Sanford to account on such allegations. The undersigned, however, feels constrained not to rule.

So, to clarify the status of the claim, the Court would recommend its dismissal to the extent the Section 1983 claim is based on the same substantive rights as the ADA and Rehabilitation claims. To the extent, however, it is based on constitutionally guaranteed procedural rights, the Court cannot, as of yet, resolve it.

## **CONCLUSION**

Wherefore, based upon the foregoing, it is RECOMMENDED that the defendant's motion to dismiss [Doc. 11] be GRANTED as to all causes of action in the plaintiffs' original Complaint [Doc. 1]. Notwithstanding, the defendant should not be dismissed from the case insofar as additional averments against him, related to newly added Medicaid Act and 42 U.S.C. § 1983 claims, have not been implicated, and, therefore, are not addressed, by the present motion.

IT IS SO RECOMMENDED.

                                                 s/Bruce Howe Hendricks
                                                 United States Magistrate Judge

December 6, 2010
Greenville, South Carolina