IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Peter B., Jimmy "Chip" E., and Michelle M., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | **ORDER AND OPINION**<br>)<br>) C.A. No.: 6:10-cv-00767-JMC |
| Marshall C. Sanford, Emma Forkner, Beverly Buscemi, Kelly Floyd, The South Carolina Department of Health and Human Services and The South Carolina Department of Disabilities and Special Needs, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Plaintiffs Peter B., Jimmy "Chip" E., and,Michelle M. ("Plaintiffs") bring this action against Defendants Marshall C. Sanford, Emma Forkner, Beverly Buscemi, Kelly Floyd, The South Carolina Department of Health and Human Services ("DHHS") and The South Carolina Department of Disabilities and Special Needs, seeking declaratory and injunctive relief for violation of Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973 (Section 54); and 42 U.S.C. § 1983. This matter is before the court on the Magistrate Judge's Report and Recommendation [Doc. 71] recommending that Plaintiffs' Motion for Preliminary Injunction [Doc. 12] be granted. After a thorough review of the record in this matter, the applicable law, the Magistrate Judge's Report and Recommendation, and Defendants' objections, the court adopts the Magistrate Judge's Report and Recommendation for the reasons stated below.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## FACTUAL AND PROCEDURAL BACKGROUND

The Report and Recommendation sets forth in detail the relevant facts and procedural background of this matter, and the court incorporates by reference the Magistrate Judge's recitation [Doc. 71, at 2-7].[1]

## DISCUSSION

**I.     Justiciability**

Defendants contend that the Magistrate Judge erred in finding this case ripe for adjudication. Specifically, Defendants contend that Chip and Michelle do not present the court with a justiciable controversy because they have not actually been subject to the proposed reduction in services due

---

[1] Defendants note that the Magistrate Judge inaccurately described the concept of "waiver." In describing the operation of the waiver, the Magistrate Judge attributed the decision to exercise a waiver to certain qualifying individuals. By way of clarification, the actual waiver is an act of the Federal DHHS Secretary. Once the waiver is put in place, qualifying individuals may exercise certain service options including the option to participate in the provision of services outside the institutional setting.

Defendants also take issue with the Magistrate Judge's estimation of hours provided to Chip and Michelle for personal care and respite services before and after the service changes at issue in this case. The court understands that the exact computation of relevant service hours is a point of dispute between the parties. However, for purposes of this motion, the exact calculation is unnecessary as there is no dispute that the changes effected by the January 1st Amendment ("Amendment") alters the allocation of the type of services provided prior to the Amendment, even if the total number of service hours provided changes slightly or not at all as Defendants contend.

to Defendants' promise to maintain pre-Amendment service levels during the pendency of the State appeals process.

The federal court has jurisdiction over an action only where a justiciable "case or controversy" exists. To satisfy the requirements of Article III, a plaintiff "must allege some threatened or actual injury ..." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973). The alleged injury must be sufficiently real and not merely conjectural or hypothetical. *Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494-96 (1974). The requirement that the harm alleged be of sufficient immediacy does not, however, require plaintiffs "to await the consummation of threatened injury to obtain preventive relief." *Id*. (citations omitted).

In this case, the proposed changes under the Amendment in the case of Chip and Michelle and the actual changes imposed on Peter B. represent a modification of services that could substantially impact each of their abilities to remain in the community. While the court recognizes that Chip and Michelle's services have been temporarily stayed at the discretion of Defendants, their ability to seek redress and more stable resolution through the court remains independent of the vagaries of Defendants. The evidence in the record, as thoroughly recited by the Magistrate Judge, demonstrates that the threat of institutionalization is very real and Plaintiffs' claims are ripe for adjudication now. *See Fisher v. Oklahoma Health Care Authority*, 335 F.3d 1175, 1181 (10th Cir. 2003) (findings that an individual need not be institutionalized before he could challenge a discriminatory law or policy under the ADA).

## II.    Injunctive Relief[2]

Defendants also argue that the Magistrate Judge erroneously recommended that a preliminary injunction issue because there is no likelihood of irreparable injury and it is unlikely that Plaintiffs will prevail on the merits.

"A preliminary injunction is an 'extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances.'" *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345 (4th Cir. 2009), *vacated by* 103 S. Ct. 2371 (April 26, 2010), *reinstated in relevant part by* 607 F.3d 355 (4th Cir. June 8, 2010). Generally, the goal of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003).

To determine whether a plaintiff is entitled to a preliminary injunction, the plaintiff must demonstrate "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008). "[A]ll four requirements must be satisfied." *Real Truth About Obama, Inc.*, 575 F.3d at 346; *see also Winter*, 129 S. Ct. at 376.

First, Defendants contend that it is very unlikely that the reduction in services to Plaintiffs will result in institutionalization; and, therefore, there is no likelihood of irreparable injury. More particularly, Defendants claim that the Magistrate Judge's recommendation was based on

---

[2] Defendants ask the court to defer to the State court actions in the Administrative Law Court and the appellate court related to Peter. The State court actions do not relate to Plaintiffs' ADA claims. Additionally, the State court dispositions thus far have not evaluated the merits of injunctive relief, but rather relied on State court procedural law.

4

conclusions of the possible effects of institutionalization instead of the actual possibility that Plaintiffs may be placed in an institution based on the reduction in services.

Plaintiffs seeking injunctive relief must demonstrate that irreparable harm is likely in the absence of an injunction, not merely speculative. *Winter*, 129 S. Ct. at 376. Plaintiffs seeking injunctive relief must do more than establish the "'possibility' of irreparable harm." *Id.* at 375. Instead, the "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate injury is *likely* in the absence of an injunction." *Id*. (emphasis supplied) (citing *Los Angeles v. Lyons,* 461 U.S. 95, 103 (1983)); *see also Real Truth About Obama, Inc.*, 575 F.3d at 346-48 (holding that the preliminary injunction standard articulated in *Winter* has overruled the Fourth Circuit's previous standard for preliminary injunctions found in *Blackwelder Furniture Co. v. Selig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977)). The harm to be prevented must be of an immediate nature and not simply a remote possibility. *In re Microsoft Antitrust Litig.*, 333 F.3d at 527.

Plaintiffs submitted reliable evidence in the form of affidavits from their treating physicians and testimony of their current caregivers that supported their allegation that a reduction in services would cause dramatic changes in their current living conditions. Based on the physicians and caregivers' knowledge of Plaintiffs' needs, they attested that service reductions would lead to the need for institutional care. The Magistrate Judge noted these affidavits in her report in addition to detailing the possible consequences of placing Plaintiffs in an institution. The court finds that this evidence demonstrates that institutionalization is sufficiently likely; and therefore, the issuance of a preliminary injunction is warranted. Defendants would have the court wait until Plaintiffs are actually removed from their current living arrangements. However, the standard requires a finding of likelihood, not absolute certainty. Further, the harm to be prevented will have already been done should the court adopt Defendants' position to wait until the effects of the service reductions are certain.

Next, Defendants argue that the Magistrate Judge erred in finding a likelihood of success on the merits. Because a preliminary injunction grants relief on a temporary basis prior to trial, the party seeking the preliminary injunction must demonstrate that it is likely to succeed on the merits at trial by "a clear showing" and may not rest on merely the probability of success. *Real Truth About Obama, Inc.,* 575 F.3d at 345 (citing *Winter*, 129 S. Ct. at 376). The ADA prohibits states from discriminating against mentally disabled persons through unnecessary segregation. *Olmstead v. L.C.*, 527 U.S. 581, 600-02 (1999). Under the ADA, states are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals have determined that community placement is appropriate, the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities. *Id*. at 587.

In this case, the only dispute between the parties' concerns whether Defendants can reasonably accommodate Plaintiffs' community placement given the resources available to the State and the needs of others with mental disabilities. Plaintiffs submitted substantial evidence tending to show that the State has available resources to maintain the services required for Plaintiffs to remain in community placements. Plaintiffs have further submitted evidence that demonstrates the possibility that community placement will result in net savings to the State for the services required for Plaintiffs. The Magistrate Judge's report outlines this evidence in detail.

Based on the evidence in the record at this point in the litigation, Plaintiffs have a sufficient likelihood of success on the merits to support the imposition of a preliminary injunction.

Finally, Defendants urge the court to find that preliminary injunctive relief would cause harm to Defendants and to the public interest. In determining whether to allow injunctive relief, the court "must balance the competing claims of injury and must consider the effect on each party [and the public interest] of the granting or withholding of the requested relief." *Winter*, 129 S. Ct. at 376

(quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)).  However, Defendants provide the court with little argument regarding the possible harm they will suffer should the injunction be allowed.  Defendants essentially claim that injunctive relief would undo the Amendment.  Defendants ignore the fact that the very purpose of injunctive relief is to maintain the status quo while the merits of the case are litigated.  If the court accepted Defendants' assertion of harm, the preliminary injunctive relief would never be appropriate.  On the other hand, absent the requested relief, Plaintiffs are subject to a reduction in services at any time - despite the ongoing litigation over the legitimacy of the reduction.  The possible harm to Plaintiffs in this case outweighs the possible harm to Defendants and the public interest will not suffer from temporarily requiring the State to do that which they claim they would voluntarily do anyway pending the resolution of this matter.

For the foregoing reasons, the court adopts the Magistrate Judge's Report and Recommendation [Doc. 71] and **GRANTS** Plaintiffs' Motion for Preliminary Injunction [Doc. 12].  Defendants shall maintain and/or return services in the quality, kind, and volume enjoyed by Plaintiffs prior to January 1, 2010, and, in the case of Peter B., prior to July 2009.

**IT IS SO ORDERED.**

s/ J. Michelle Childs
United States District Judge

March 7, 2011
Greenville, South Carolina