IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Peter B., Jimmy "Chip" E., and Michelle M., | ) ) ) | |
| Plaintiffs, | ) ) ) | C/A No. 6:10–767-TMC |
| v. | ) ) ) ) | **OPINION & ORDER** |
| Marshall C. Sanford, Beverly Buscemi, Kelly Floyd, the South Carolina Department of Health and Human Services, the South Carolina Department of Disabilities and Special Needs, Nikki Randhawa Haley, Anthony Keck, and Richard Huntress, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

In their Amended Complaint, Plaintiffs seek declaratory and injunctive relief for violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973 ("Section 504"); the Medicaid Act;[1] and 42 U.S.C. §§ 1983, 1985, and 1988. (Compl. ¶ 6). This matter is before the court on the Summary Judgment Motion of Defendants Marshall C. Sanford and Nikki Randhawa Haley, the former and current governors of South Carolina, respectively (referred to herein as "Defendants"). (Dkt. # 153). Plaintiffs have filed a response opposing the

---

[1]Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v, is known as the Medicaid Act.

motion and Defendants have filed a reply.[2]  This motion is now ripe for ruling.

## I. Background/Procedural History

Plaintiffs in this action are three individuals who have varying degrees of mental disabilities and/or physical disabilities. Plaintiff Peter B. is 43 years old and has moderate mental retardation, hydrocephalus, diabetes, coronary heart disease, an anxiety disorder, and a history of stress-induced seizures. (Am. Compl. ¶ 34). Chip E. is 38 years old and has normal intelligence, severe cerebral palsy, and a speech disorder and he is confined to a wheelchair. (Am. Compl. ¶¶ 85-86). Michelle M. is 37 years old and has profound mental retardation, autism, a seizure disorder, a sleep disorder, and Parkinson's disease and is unable to speak. (Am. Compl. ¶¶ 139-140).

Plaintiffs participate in a Medicaid waiver program for persons with Mental Retardation/Related Disabilities ("MR/RD waiver"). (Am. Compl. ¶ 31).[3]  The MR/RD waiver program permits the federal government to waive the requirement that certain disabled persons must live in an institution in order to receive services funded by Medicaid. 42 U.S.C. § 1396n(c).

---

[2]The court notes that Plaintiffs' Memorandum in Opposition to Defendants' Motion is thirty-five pages in length.  Plaintiffs did not seek the court's permission to exceed the fifteen-page limit provided in Local Civil Rule 7.05 (B)(2) DSC.  The court accepts the memorandum, but admonishes counsel to abide by the rules in future filings.

[3]As noted in one of the amicus memorandum filed in this action, the terms "intellectual disability" and "person with intellectual disability" are being substituted in state law for "mentally retardation"  and "mentally retarded," respectively.  (Dkt. # 174).  Thus, the reference to this waiver as MR/RD is in the process of being replaced by Intellectual  Disabilities and Related Disabilities waiver or ID/RD waiver. 2011 South Carolina Laws Act No. 47 (eff. June 7, 2011).  However, 42 U.S.C. § 1396n(c) and various other federal laws and regulations still use the nomenclature "mental retardation."  The court will continue to use the MR/RD terminology which was in effect at the time this case was filed and was used by the parties in their pleadings and memoranda.

Medicaid is a cooperative federal-state program designed to furnish medical assistance to persons "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. The Centers for Medicare and Medicaid Services ("CMS") administers the program on behalf of the Secretary of the United States Department of Health and Human Services. While states are not required to participate in Medicaid, all of them do. *Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275 (2006). Once a state chooses to participate in the Medicaid program, it must comply with the federal statutory and regulatory scheme. *Harris v. McRae*, 448 U.S. 297, 301 (1980).

Each state's Medicaid plan must specify a single state agency designated to administer the Medicaid plan, and no other state agency can possess or be delegated discretion over the administration of the plan. 42 C.F.R. § 431.10(a) and (e). In South Carolina, the South Carolina Department of Health and Human Services ("SCDHHS") is the state agency designated to administer and supervise the Medicaid plan. S.C. Code Ann. § 44-6-30(1). SCDHHS is headed by a Director appointed by the Governor. S.C. Code Ann. § 44-6-10.

The South Carolina Department of Disabilities and Special Needs ("SCDDSN") provides services to individuals with head and spinal cord injuries and those with developmental disabilities, such as mental retardation and autism. S.C. Code Ann. 44-21-10. SCDDSN is led by a director appointed by the South Carolina Commission on Disabilities and Special Needs ("Commission"). S.C. Code Ann. §§ 44-20-220 and 44-20-230. The Commission is an advisory board consisting of seven members appointed by the Governor. S.C. Code Ann. § 44-20-225.

The majority of SCDDSN's funding comes through SCDHHS from the Medicaid program. SCDHHS contracts with the SCDDSN to operate the MR/RD waiver program.

3

> When an individual in South Carolina applies for DDSN services, including the waiver program, DHHS first determines whether the individual is eligible for Medicaid funding. Thereafter, DDSN determines whether the individual is eligible for DDSN services and, if so, what "level of care" the individual requires. To be given the option under the waiver program of receiving services at home or in the community, rather than in an institution, individuals must first qualify for the Intermediate Care Facility for the Mentally Retarded ("ICF/MR") level of care-that is, they must meet the criteria necessary to reside in an institution like a nursing home. If approved, waiver services are provided in a variety of settings including, in order of restrictiveness: (1) a Supervised Living Program II ("SLP II"), an apartment where recipients of DDSN services live together; (2) a Community Training Home I ("CTH I"), a private foster home where a recipient of DDSN services resides with a family, one member of whom is a trained caregiver; and (3) a Community Training Home II ("CTH II"), a group home with live-in caregivers for four or fewer recipients of DDSN services.

*Doe v. Kidd*, 501 F.3d 348, 350 (4th Cir. 2007).

Plaintiffs allege Defendants have reduced or eliminated services provided to them under the MR/RD waiver program and that this diminution in services will force them into institutions in violation of *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). In *Olmstead*, the Supreme Court held that the "unjustified institutional isolation of persons with disabilities is a form of discrimination" prohibited by the ADA. *Id.* at 2187. The Supreme Court stated:

> States are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities.

*Id.* at 2190.

Plaintiffs seek declaratory and injunctive relief finding Defendants have violated the ADA, Section 504 of the Rehabilitation Act, and the Medicaid Act, prohibiting the

4

Defendants from reducing MR/RD Medicaid waiver services, and requiring Defendants to restore all services which were reduced or eliminated. (Am. Compl. ¶¶ 316-318). Further, Plaintiffs seek an order requiring "Defendants to provide all home and community based services which are determined by participants' responsible treating physicians to be medically necessary, so long as the cost of these services is less than the cost of their care in a Regional Center, except where the orders of the treating physician involve Medicaid fraud or are outside of the reasonable standards of medical care, as determined by responsible and unbiased medical professionals." (Am. Compl. ¶ 319). Finally, Plaintiffs seek an order declaring that Defendants Sanford, Haley, Keck, Floyd, Huntress, and Buscemi denied Plaintiffs' civil rights in violation of 42 U.S.C. §§ 1983 and 1988. (Am. Compl. ¶ 321).[4]

## II. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents,

---

[4]Originally, Plaintiffs asserted three claims against Sanford pursuant to: 1) Title II of the ADA; 2) Section 504 of the Rehabilitation Act, and 3) Section 1983 for violations of the ADA and the Rehabilitation Act. The court dismissed all of these claims against Sanford. At that time, however, Sanford was not dismissed as a defendant because Plaintiffs had sought to file an Amended Complaint to include new claims under the Medicaid Act and § 1983. The court did not rule on whether these new claims should also be dismissed because the claims were not properly before the court at that time.

5

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### III. Discussion

As set forth above, Plaintiffs contend Defendants have reduced certain in-home and community based personal health services and this reduction will force them into

institutional settings, in violation of the holding in *Olmstead*. Plaintiffs allege four causes of action: 1) Violations of the ADA against Defendants Keck, Buscemi, Floyd, Huntress, SCDHHS, and SCDDSN; 2) Violations of Section 504 of the Rehabilitation Act against Defendants Keck, Buscemi, Floyd, Huntress, SCDHHS, and SCDDSN; 3) Violations of the Medicaid Act against all individual and agency Defendants; and 4) Violations of Sections 1983 and 1988 against individual Defendants Sanford, Haley, Keck, Buscemni, Flord, and Huntress. (Am. Compl. ¶¶ 248-302). Plaintiffs state that are suing Defendant Sanford only in his individual capacity and Defendant Haley only in her official capacity. (Am. Compl. ¶¶ 11, 18).[5] The court notes that only the last two causes of action are alleged against the moving Defendants Sanford and Haley.[6]

### 1. Sovereign Immunity

Defendants contend that Plaintiffs' claims against them regarding violations of the Medicaid Act are barred by the Eleventh Amendment. The Eleventh Amendment bars suits against a State in federal court.[7] However, Eleventh Amendment immunity is

---

[5]Plaintiffs originally sued then Governor Sanford in both his official and individual capacities. During the pendency of this action, Haley succeeded Sanford as governor. Therefore, pursuant to Rule 25 (d)(1), Fed.R.Civ.P., in regard to only the official capacity claims, Governor Haley was substituted for former Governor Sanford in the Amended Complaint. Fed.R.Civ.P. 25(d)(1) (providing "[w]hen a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party."). Sanford remained a party only in his individual capacity. (*See* Dkt. # 106 - Court's Order discussing automatic substitution of parties).

[6]As noted, the court previously dismissed the ADA and Section 504 Rehabilitation Act claims against Defendant Sanford. (Dkt. # 93).

[7]The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

not absolute. *See Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized a narrow exception for claims brought against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). The *Ex parte Young* exception creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Additionally, the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Defendants Sanford and Haley do not dispute that the *Ex Parte Young* doctrine allows a plaintiff to sue a state official in his official capacity for prospective injunctive relief. (Defs.' Reply Mem. at 2). Rather, these Defendants argue that *Ex Parte Young* does not apply in this case because the governors did not have the requisite connection to the enforcement of the pertinent Medicaid provisions. *Id.* at 7.

> *Ex parte Young* requires a "special relation" between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar. *Ex parte Young*, 209 U.S. at 157, 28 S.Ct. 441. "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir.1996) (internal quotation marks omitted). Thus, "[t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir.1979).

*Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001). As long as

---

U.S. CONST. amend. XI.

8

the state official "has some connection with the enforcement of the act," that official is an "appropriate defendant." *Shell Oil v. Noel*, 608 F.2d 208, 211 (1st Cir.1979). "It is a question of federal jurisdictional law whether the connection is sufficiently intimate to meet the requirements of Ex parte Young." *Id.*

An official's general authority to enforce the laws of a state is not sufficient to make a government official a proper party in an action challenging a law. *Waste Mgmt. Holdings*, 252 F.3d at 331. Further, the power to make appointments to agency boards is insufficient, even coupled with general enforcement duties and veto/approval powers to establish that a state official falls under the exception set forth in *Ex parte Young*. *Kuck v. Danaher*, 822 F. Sipp. 2d 109 (D. Conn. 2011)(citing *Kelly v. Burks*, 414 F.Supp.2d 681, 686 (E.D. Ky. 2006). *See also D.G. ex rel. Stricklin v. Henry*, 591 F. Supp. 2d 1186, 1189 (N.D. Okla. 2008) (holding despite governor's power to make appointments to the entity that acted unconstitutionally, the governor is not responsible for actually administering the foster case system); *LensCrafters, Inc. v. Sundquist*, 184 F. Supp. 2d 753, 757-59 (M.D.Tenn. 2002) (finding Eleventh Amendment bars suit against governor when only nexus between governor and challenged action by board was governor's power to make appointments to board); *Sweat v. Hull*, 200 F. Supp. 2d 1162, 1175-76 (D. Ariz. 2001) (dismissing claim against Governor who signed allegedly unconstitutional bill into law and appointed the cabinet official responsible for enforcing that law).

Here, in regard to the alleged Medicaid violations, Plaintiffs contend that Defendants violated their rights under 42 U.S.C. § 1396, by failing to provide services with reasonable promptness and sufficiency, employ reasonable standards, allow choice of provider, provide equal access, and assure that the health and welfare of all participants are protected. (Am. Compl. ¶ 296). Plaintiffs also allege Defendants

violated their due process rights under 42 C.F.R. § 431.210 by failing to provide a hearing, notice, legitimate reasons for attempting to reduce services, and citation to specific regulations supporting a reduction. (Am. Compl. ¶¶ 290; 292). The hearing and notice requirements set forth in 42 C.F.R. § 431 are placed upon the state Medicaid agency and not the governor. Further, while 42 C.F.R. § 430.12 provides the governor is to review and comment on a state's Medicaid plan, this does not create any enforcement rights in the governor. Therefore, as a practical matter, to impose an injunction on the governor to cure any alleged problems based on 42 C.F.R. § 431 or 42 U.S.C. § 1396 would have no real effect. Moreover, while the Governor of South Carolina has the power to appoint and general supervisory authority, as noted above, neither appointment power nor general supervisory power over persons responsible for enforcing a challenged provision will subject an official to suit. *L.A. County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir.1992) (citations omitted); *LensCrafters, Inc. v. Sundquist*, 184 F. Supp. 2d at 757-59.

The court finds that Plaintiffs' allegations against Defendants Sanford and Haley are not sufficient to meet the requirements of the exception espoused in *Ex parte Young*. Accordingly, they should be dismissed in their official capacities.[8]

---

[8]Again, as the court has noted, Plaintiffs specifically state that Defendant Sanford is named only his individual capacity. (Am. Compl. ¶ 11). However, some allegations in the Amended Complaint could be construed as claims against Defendant Sanford in his official capacity. (*See e.g.* Am. Compl. ¶ 12). Therefore, out of an abundance of caution, the court has included Defendant Sanford, to the extent that he is named in his official capacity as to any claim, in its discussion of Eleventh Amendment immunity.

## 2. Section 1983 Claims against Defendant Sanford[9]

In Count IV, Plaintiffs allege a "violation of 42 U.S.C. §1983" against the "individual Defendants," specifically defined to include Defendants Sanford and Haley.[10] In order to state a claim under § 1983, Plaintiffs must allege that the conduct of which they complain was committed by a person acting under the color of state law and that the conduct deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. *See, e.g., West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiffs allege the individual Defendants acted in concert to violate Plaintiffs' due process rights under the Fourteenth Amendment by denying Plaintiffs a fair hearing, as required by 42 C.F.R. § 431.205, and by failing to render a

---

[9]Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . . .

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred' . . . [t]he first step in [analyzing] any such claim is to identify the specific [federal] right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted) (*quoting Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In this count, Plaintiffs also assert violations of 42 U.S.C. § 1988. The court will not discuss § 1988 because it merely provides for attorneys' fees in actions brought pursuant to § 1983, § 1985, and § 1986 and does not, itself, provide an independent cause of action.

[10]Plaintiffs' references to the "individual" Defendants should not be construed as claims against Defendant Haley in her individual capacity. The court reiterates that Plaintiffs specifically state Defendant Haley is being sued only in her official capacity (Am. Compl. ¶ 18) and the court has already determined that she should be dismissed based upon Eleventh Amendment immunity. However, even if Plaintiffs alleged such a claim against Defendant Haley, it would be dismissed as there are no allegations to support such a claim.

final decision within ninety days of the receipt of a request for a hearing, as required by 42 C.F.R. § 431.221. (Am. Compl. ¶ 305). Additionally, Plaintiffs allege Defendants violated their rights under the Medicaid Act by diverting funds under the guise of budget reductions and the Supremacy Clause[11] by implementing state agency policies which conflict with the directives of the Medicaid Act and the Constitution. (Am. Compl. ¶¶ 304; 306). Plaintiffs seek an order declaring their rights under the Medicaid Act and an award of fees, costs, and expenses. (Am. Compl. ¶¶ 313-314).

Reviewing the factual allegations in the Amended Complaint against Sanford, Plaintiffs allege that Sanford "was responsible for directing, supervising and controlling" SCDHHS and all long term care programs for disabled persons. (Am. Compl.¶ 11). Plaintiffs allege Sanford exceeded the authority of the governor's office by causing the diversion of funds which were to be used to provide services to Plaintiffs and other disabled persons. (Am. Compl. ¶ 13). Plaintiffs allege Sanford was informed about alleged civil rights violations, violations of the Medicaid Act, and misappropriation of funds, but failed to correct or prevent these problems. (Am. Compl. ¶ 14). Further, Plaintiffs allege Sanford refused to appoint three consumer advisory boards as required by S.C. Code Ann. § 44-20-225. (Am. Compl. ¶ 17). Finally, Plaintiffs allege Sanford ignored reports of financial mismanagement and prevented public review of the actions taken by SCDDSN. (Am. Compl. ¶ 17).

As stated above, the hearing and notice requirements set forth in 42 C.F.R. § 431 are placed upon the state Medicaid agency and not the governor. Thus, the decision not to afford Plaintiffs notice or a hearing resides with SCDHHS and not the Governor. Furthermore, there are no allegations that Sanford knew or acquiesced in

---

[11]The Supremacy Clause provides that "the Laws of the United States . . . shall be the supreme Law of the Land. . . ." U.S. CONST. art. VI, cl. 2.

the deprivation of hearings or notice. Likewise, decisions regarding Plaintiffs' Medicaid services were not made by the Governor.

Other than the allegation that he diverted funds, Plaintiffs have not alleged that Defendant Sanford was personally involved in reducing their Medicaid services. Rather, Plaintiffs merely assert that Sanford had supervisory responsibilities over those persons who did commit the alleged acts. However, there is no respondeat superior liability under § 1983. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978); *see also Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge*, 550 F.2d at 928.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009), the Supreme Court held that allegations of unconstitutional violations involving discrimination require a showing of discriminatory intent by each defendant and held that "the term 'supervisory liability' is a misnomer." In *Iqbal*, a Pakistani Muslim was arrested on criminal charges in New York City shortly after the September 11, 2001, terrorist attacks and detained by federal officials under restrictive conditions. *Id.* at 1942. Iqbal sued pursuant to § 1983, alleging that he had been unconstitutionally mistreated because of policies put in place by various government officials, including then-Attorney General John Ashcroft and Federal Bureau of Investigation Director Robert Mueller. *Id.* Because vicarious liability is inapplicable to *Bivens* suits, the court held that a plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," rather than assert that the higher-ranking officials were subject to supervisory liability. *Id.* at 1948. The Court held:

> Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a *Bivens*

13

action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same olds true for an official charged with violations arising from his or her superintendent responsibilities.

*Id.* The dissent in *Iqbal* opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely." *Id.* at 1957 (Souter, J., dissenting).[12] Accordingly, Sanford is not liable under § 1983 based upon Plaintiffs' allegations of supervisory liability.

As to Plaintiffs' allegations that Sanford diverted funds when he voted to approve SCDDSN's purchase of real estate, this allegation also does not establish liability against Sanford in his individual capacity under § 1983 for two reasons. First, as pointed out by the Defendants, SCDDSN sought approval for this real estate purchase to use excess debt service funds. Debt service funds for SCDDSN were established pursuant to S.C. Code Ann. § 44-20-1170 to pay for capital improvement projects. If there is excess money in this fund, § 44-20-1170 (B) provides that the State Budget and Control Board may approve the transfer of the excess funds "out of the special fund for contract awards to local disabilities and special needs boards for needed improvements at the local level and for nonrecurring prevention, assistive technology, and quality initiatives at the regional centers and local boards." The approval of the purchase of the real estate did not divert funds which could have been used to provide services to Plaintiffs.

---

[12] Even if the Court did not entirely eliminate the concept of supervisory liability in § 1983 cases, the allegations in the Amended Complaint in this case fail to establish liability on such a theory based on prior Fourth Circuit precedent. *See Carter v. Morris*, 164 F.3d 215, 221 (4th Cir.1999); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates).

Second, the court finds Sanford is entitled to legislative immunity. In *Bogan v. Scott–Harris*, 523 U.S. 44, 53–54 (1998), the Supreme Court held that city council members were entitled to absolute immunity from § 1983 liability for "actions taken in the sphere of legitimate legislative activity." The Court found that the council's action in eliminating certain services was legislative in substance because their action "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id.* at 55–56. This absolute legislative immunity does not apply only to legislators. *Id.* at 55. The Supreme Court acknowledged that executive branch officials are entitled to legislative immunity when they perform legislative functions such as making discretionary policy decisions that implicate budgetary priorities and the provision of public services. *Id.* at 55-56.[13]

Moreover, a number of United States Courts of Appeals have specifically applied the doctrine of legislative immunity to state governors. *See e.g. Empress Casino Joliet Corp. v. Blagojevich*, 638 F.3d 519, 529 (7th Cir. 2011) (finding governor was entitled to absolute immunity in regard to allegations that he "took bribes in exchange for influencing the state legislature to pass the Racing Acts and for signing the Acts into law"); *Baraka v. McGreevey*, 481 F.3d 187, 200-02 (3d Cir. 2007)(holding that Governor of New Jersey was entitled to legislative immunity when he recommended that the state legislature repeal the position of State Poet Laureate and signed the repeal into law); *Torres-Rivera v. Calderon-Serra*, 412 F.3d 205, 213 (1st Cir. 2005)(holding "a governor who signs into law or vetoes legislation passed by the legislature is also entitled to absolute immunity for that act."); *Women's Emergency Network v. Bush*, 323 F.3d 937,

---

[13]Legislative immunity applies to claims for declaratory and injunctive relief, as well as claims for damages. *Supreme Court of Virginia v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732–33 (1980).

15

950 (11th Cir. 2003)("Under the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law."). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54.

In a case similar to the instant action, *Lewis v. N.M. Dep't of Health*, 275 F.Supp.2d 1319 (D.N.M. 2003), the court addressed whether the former New Mexico Governor was entitled to legislative immunity when the plaintiffs alleged violations of the Medicaid Act and the ADA, and where the plaintiffs asserted that "they were entitled to less restrictive home and community-based services with 'reasonable promptness' instead of the institutional care they were receiving." *Id.* at 1323. The court found the governor was entitled to legislative immunity, noting that the "[p]laintiffs' allegations regarding Defendant Governor Johnson's actions, either directly or indirectly, concern what they perceive to be inadequate funding and support" for the services they desired. *Id.* at 1326. The court explained that "funding for any state program is a budgetary and policy decision for the state to make," and asserted that the governor's "actions in preparing a budget are an integral part of the legislative process." *Id.* at 1327 (internal quotations omitted). Here, voting to approve SCDDSN's purchase of real estate with excess debt service funds was clearly legislative action. Moreover, the court in *Lewis* concluded that the governor's pronouncement of policy objectives and advice to state officials that the growth of particular programs should be limited was also "legislative in nature." *Id.* at 1327-28. Likewise, here, many of Plaintiffs' allegations against Sanford are based on Sanford's positions and policies and how he acted as Governor from a policy standpoint and not his personal involvement regarding this § 1983 action. Accordingly, he is entitled to legislative immunity.

Finally, even if the court could award Plaintiffs injunctive relief against Sanford in

his individual capacity, the requested injunctive relief is improper. Plaintiffs' §1983 claims against Sanford involve allegations regarding Sanford's past conduct when he was governor. As Defendant Sanford is now currently a private citizen, he is not involved in any ongoing constitutional deprivations and he could not provide Plaintiffs, should they prevail, with the injunctive relief they seek. The undisputed fact is that he would have absolutely no role to play in regard to providing Plaintiffs with any prospective relief. In addition to legislative immunity, because Plaintiffs fail to allege any personal involvement on the part of Sanford and fail to make any allegations which reveal the presence of the required elements for supervisory liability, Sanford should be granted summary judgment on the § 1983 claims alleged against him.[14]

## IV. Conclusion

Based on the foregoing, Defendants' Summary Judgment Motion (Dkt. # 153) is **GRANTED** and Defendants Sanford and Haley are dismissed from this action.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge


Greenville, South Carolina
June 13, 2012

---

[14] The court notes Plaintiffs argue that the court should not dismiss Plaintiffs' claims pending a decision by the Supreme Court in *Douglas v. Independent Living Centers*, ___ U.S. ___, 132 S.Ct. 1204, 182 L.Ed.2d 101 (2012). (Pls.' Mem. at 31). That case was decided on February 22, 2012, and thus the request to postpone a resolution of the instant motion is now moot. Moreover, *Douglas* is wholly inapplicable. In *Douglas* the Supreme Court remanded the action to the Ninth Circuit to address whether a plaintiff may bring a Supremacy Clause challenge where the allegedly non-compliant state law has been approved by CMS. The action before this Court does not challenge a state statute, let alone one that has been approved by CMS.

17