IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Peter B., Jimmy "Chip" E., and Michelle M., | ) ) ) | C/A No. 6:10–767-TMC |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **OPINION & ORDER** |
| Beverly Buscemi, Kelly Floyd, the South Carolina Department of Health and Human Services, the South Carolina Department of Disabilities and Special Needs, Anthony Keck, and Richard Huntress, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

_____

In their Amended Complaint, Plaintiffs seek declaratory and injunctive relief for alleged violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973 ("Section 504"); the Medicaid Act;[1] and 42 U.S.C. §§ 1983, 1985, and 1988. (Compl. ¶ 6). This matter is before the court on the Motion to Dismiss and/or Motion for Summary Judgment Based on Mootness and Motion for Summary Judgment filed by Defendants Beverly Buscemi, Kelly Floyd, Richard Huntress, Anthony Keck, South Carolina Department of Health and Human Services ("DHHS"), and the South Carolina Department of Disabilities and Special Needs ("DDSN") (Dkt. # 169 and 200); and Plaintiffs Peter B., Jimmy "Chip" E., and Michelle M.'s Amended Motion for Summary Judgment (Dkt. # 207). Responses and replies have been filed in regard to these motions. (Dkt. # 175, 181, 215, 214, and

_____

[1]Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v, is known as the Medicaid Act.

219).  These motions are now ripe for ruling.[2]

## I. Background/Procedural History

Medicaid is a cooperative federal-state program designed to furnish medical assistance to persons "whose income and resources are insufficient to meet the costs of necessary medical services."  42 U.S.C. § 1396.  The Centers for Medicare and Medicaid Services ("CMS") administers the program on behalf of the Secretary of the United States Department of Health and Human Services.  While states are not required to participate in Medicaid, all of them do.  *Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275 (2006).  Once a state chooses to participate in the Medicaid program, it must comply with the federal statutory and regulatory scheme.  *Harris v. McRae*, 448 U.S. 297, 301 (1980).  Each state's Medicaid plan must specify a single state agency designated to administer the Medicaid plan. 42 C.F.R. § 431.10(a) and (e).  In South Carolina, DHHS is the state agency designated to administer and supervise the Medicaid plan. S.C. Code Ann. § 44-6-30(1).

Plaintiffs in this action are three individuals who have varying degrees of mental and/or physical disabilities. Plaintiff Peter is 43 years old and has moderate mental retardation, hydrocephalus, diabetes, coronary heart disease, an anxiety disorder, and a history of stress-induced seizures.  (Am. Compl. ¶ 34).  Chip is 38 years old and has normal intelligence, severe cerebral palsy, and a speech disorder, and he is confined to a wheelchair.  (Am. Compl. ¶¶ 85-86).  Michelle is 37 years old and has profound mental retardation, autism, a seizure disorder, a sleep disorder, Parkinson's disease, and Cattleman's disease, and is unable to speak and recently has been confined to a

---

[2]The court decides these motions without a hearing as the parties' arguments are fully set forth and supported in the memoranda and exhibits accompanying their motions. *See* LR 7.08 (stating "[h]earings on motions may be ordered by the Court in its discretion.").

geri-chair or bed.  (Am. Compl. ¶¶ 139-140; Pls.' Mem. Supp. Am. Mot. for Summ. J. at 3).

Plaintiffs participate in a Medicaid waiver program for persons with Mental Retardation/Related Disabilities ("MR/RD waiver").  (Am. Compl. ¶ 31).[3]  The MR/RD waiver program permits the federal government to waive the requirement that certain disabled persons must live in an institution in order to receive services funded by Medicaid.  42 U.S.C. § 1396n(c).  DHHS contracts with DDSN to operate the MR/RD waiver program.

Plaintiffs allege Defendants have reduced or eliminated services (or threatened to do so) provided to them under the MR/RD waiver program and that this diminution in services will force them into institutions in violation of *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).  In *Olmstead*, the Supreme Court held that the "unjustified institutional isolation of persons with disabilities is a form of discrimination" prohibited by the ADA.  *Id*. at 2187.  The Supreme Court stated:

> States are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities.

*Id*. at 2190.

---

[3]As noted in the amicus memorandum, the terms "intellectual disability" and "person with intellectual disability" are being substituted in state law for "mental retardation" and "mentally retarded," respectively.  (Dkt. # 174).  Thus, the reference to this waiver as MR/RD is in the process of being replaced by Intellectual Disabilities and Related Disabilities waiver or ID/RD waiver.  2011 South Carolina Laws Act No. 47 (eff. June 7, 2011).  However, 42 U.S.C. § 1396n(c) and various other federal laws and regulations still use the nomenclature "mental retardation."  The court will continue to use the MR/RD terminology which was in effect at the time this case was filed and was used by the parties in their pleadings and memoranda.

Specifically, Plaintiffs Chip and Michelle challenge reductions which were to take place on January 1, 2010, as a result of a policy change which placed a 28-hour per week cap on personal care attendant ("PCA") services.  (Am. Compl. ¶ 90).  PCA services includes hands-on assistance with daily living.  At that time, Chip was receiving 52 hours per week and Michelle was receiving 56 hours per week.  (Am. Compl. ¶ 142; Defs.' Mem. Supp. Summ. J. Mot. at 3).  Chip and Michelle pursued review of the proposed reductions in state proceedings and their PCA services hours were never reduced.

Plaintiff Peter's challenges differ.  Peter participates in a DSSN residential program, Supervised Living Program II ("SLP II").  Peter has also been receiving MR/RD waiver services, including 12 hours of one-on-one companion services. (Am. Compl. 36, 48).  In 2005, Peter was notified that his companion services were being terminated. (Am. Compl. ¶ 50).  Peter appealed the final agency decision to DHHS and the hearing officer affirmed finding it lacked subject matter jurisdiction because Peter had failed to establish that the companion services were necessary to keep him out of an institution, and therefore such services were not services covered by the Medicaid waiver.  Peter appealed to the Administrative Law Court ("ALC"), which also affirmed.

Peter subsequently appealed the ALC's decision and, on August 20, 2011, the South Carolina Court of Appeals reversed the ALC's conclusion that the hearing officer lacked subject matter jurisdiction and remanded the action to DHHS for a hearing. *Brown v. S.C. Dept. of Health & Human Servs.*, 709 S.E.2d 701 (S.C. Ct. App. 2011). Stating that subject matter jurisdiction is determined by the question to be answered and not by the answer, the court held that because Peter alleges his companion services are covered by Medicaid, DHHS had subject matter jurisdiction. *Brown,* 709 S.E.2d at 704.  The court specifically stated it was not reaching the issue of whether

companion services qualify as a waiver.  *Id.* at 705.  Peter is currently awaiting a hearing before a DHHS officer.

Plaintiffs seek declaratory and injunctive relief finding Defendants have violated the ADA, Section 504, and the Medicaid Act, prohibiting the Defendants from reducing MR/RD Medicaid waiver services, and requiring Defendants to restore all services which were reduced or eliminated.  (Am. Compl. ¶¶ 316-318).  Further, Plaintiffs seek an order requiring "Defendants to provide all home and community based services which are determined by participants' responsible treating physicians to be medically necessary, so long as the cost of these services is less than the cost of their care in a Regional Center, except where the orders of the treating physician involve Medicaid fraud or are outside of the reasonable standards of medical care, as determined by responsible and unbiased medical professionals."  (Am. Compl. ¶ 319).  Finally, Plaintiffs seek an order declaring that Defendants Keck, Floyd, Huntress, and Buscemi denied Plaintiffs' civil rights in violation of 42 U.S.C. §§ 1983 and 1988.  (Am. Compl. ¶ 321).

## II.  Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

5

materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### III.  Discussion

As set forth above, Plaintiffs contend Defendants have reduced certain in-home and community based personal health services and this reduction will force them into institutional settings, in violation of the holding in *Olmstead*.  In their Amended Complaint, Plaintiffs allege four causes of action: 1) Violations of the ADA against

6

Defendants Keck, Buscemi, Floyd, Huntress, DHHS, and DDSN; 2) Violations of Section 504 against Defendants Keck, Buscemi, Floyd, Huntress, DHHS, and DDSN; 3) Violations of the Medicaid Act against all individual and agency Defendants; and 4) Violations of Sections 1983 and 1988 against individual Defendants Keck, Buscemni, Floyd, and Huntress. (Am. Compl. ¶¶ 248-302). As noted above, Plaintiffs have filed an amended summary judgment motion (Dkt. # 207), and Defendants have filed a summary judgment motion on the merits (Dkt. # 200) and a motion to dismiss and/or for summary judgment motion based on mootness (Dkt. #169). For the reasons set forth below, the court grants in part Defendants' motion and denies Plaintiffs' motion. Further, the court stays the remaining claims pending resolution of the state administrative proceedings.

Defendants contend that two of the Plaintiffs' claims are moot and all of Plaintiffs' claims are unripe or currently non-justiciable. (Defs.' Mem. Supp. Summ. J. Mot. at 13-24).[4] Specifically, Defendants contend that two Plaintiffs, Chip and Michelle, have prevailed in a case before the South Carolina ALC, and DHHS has not appealed that decision, and further the threatened reductions never actually took place rendering these Plaintiffs' claims in the present action moot. Further, in regard to all Plaintiffs, Defendants contend that currently there is not a case or controversy and any potential future claims are not ripe. The court agrees that Chip and Michelle's claims are moot. However, the court finds the claims of Peter are not moot and ripe.

_____

[4]As noted above, Defendants also filed an earlier motion to dismiss and/or for summary judgment based upon mootness. (Dkt. # 169). In this motion, Defendants seek the dismissal of the claims of Plaintiffs Chip and Michelle. The courts' decision to grant in part Defendants' later summary judgment motion provides the same relief, and therefore, moots Defendants' earlier motion to dismiss and/or for summary judgment. (Dkt. # 169). Furthermore, the court notes that Defendants specifically incorporated their prior filings into their subsequent summary judgment motion. (Dkt. # 200 Defs.' Mem. Supp. Summ. J. Mot. at 12).

Turning to the Amended Complaint, the court notes that Plaintiffs seek the following relief:

1) "that this Court assume jurisdiction over this action and maintain continuing jurisdiction until defendants are in full compliance with every order of this Court."  (Am. Compl. ¶ 315).

2) "an order finding that Defendants included in Counts One and Two have violated the ADA and Section 504 of the Rehabilitation Act as set forth in this Complaint."  (Am. Compl. ¶ 316).

3) "an order finding that the Defendants included in Count Three have violated the Medicaid Act."  (Am. Compl. ¶ 317).

4) "an order prohibiting the Defendants from reducing MR/RD Medicaid waiver services and requiring Defendants to restore all services which were reduced or eliminated by amendments to the State's Medicaid applications to CMS." (Am. Compl. ¶ 318).

5) "an order directing Defendants to provide all home and community based services which are determined by participants' responsible treating physicians to be medically necessary, so long as the cost of these services is less than the cost of their care in a Regional Center, except where the orders of the treating physician involve Medicaid fraud or are outside of the reasonable standards of medical care, as determined by responsible and unbiased medical professionals."  (Am. Compl. ¶ 319).

6) "other relief as shall be determined by this Court to be just and equitable, including payment of legal fees and costs of this action."  (Am. Compl. ¶ 320).

7) "[d]eclare that individual Defendants Sanford, Haley, Keck, Floyd, Huntress and Buscemi have acted to deny the civil rights of the Plaintiffs in violation of 42 U.S.C.

§§ 1983 and 1988." (Am. Compl. ¶ 321).[5]

Plaintiffs have attempted to broaden the scope of their Amended Complaint by asserting several new issues and arguments which are not properly before this court as these claims were not raised in the Amended Complaint.  For example, in their amended summary judgment motion, Plaintiffs now request an "order requiring DHHS to issue a final determination on all fair hearing appeals brought by MR/RD waiver program participants within 90 days of the request and requiring the hearing officers to base their decisions exclusively on evidence introduced at the hearing . . . . [and] an order prohibiting DHHS officials and hearing officers from participating in ex parte communications with employees of DDSN or other third parties on matters involving pending cases . . . . " (Dkt. # 207 - Pls.' Mem. Supp. Am. Summ. J. Mot. at 18)(internal citation and quotation marks omitted).  The court has carefully reviewed the Amended Complaint and limits it discussion to those issues and claims raised therein.

First, the court finds it unnecessary to enter a separate order directing Defendants to comply with the court's orders or to establish  its continuing jurisdiction in regard to compliance with its orders.  At this time, there are no credible allegations that Defendants currently are not in compliance with the court's prior orders.  Furthermore, if Plaintiffs believe Defendants are violating a court order, they can file an appropriate motion in that regard.

Plaintiffs' request for a declaration that Defendants' past conduct violated Section 504, the Medicaid Act, or their due process rights seeks the kind of retrospective relief that the Supreme Court has found to be barred by the Eleventh Amendment. *See Green v. Mansour*, 474 U.S. 64, 68-73 (1986) (holding that petitioners could not obtain

_____

[5]Defendants Mark Sanford and Nikki Haley were dismissed from this action on June 13, 2012.  (Dkt. # 185).

declaratory judgment that a state's former method of calculating welfare benefits violated federal law where there was no ongoing violation). Nor is this request for relief covered by the exception recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908) and its progeny.  Where there is an ongoing violation, however, such a claim remains a viable claim, as discussed below.

As noted above, Plaintiffs also request an order

directing Defendants to provide all home and community based services which are determined by participants' responsible treating physicians to be medically necessary, so long as the cost of these services is less than the cost of their care in a Regional Center, except where the orders of the treating physician involve Medicaid fraud or are outside of the reasonable standards of medical care, as determined by responsible and unbiased medical professionals.

(Am. Compl. ¶ 319).[6]  This request for relief appears to apply to only Peter's claims as he contends that his companion services are medically necessary.  (See Pls.' Mem.

---

[6]It now appears Plaintiffs are seeking different relief in this regard.  In their memorandum supporting their Amended Motion for Summary Judgment, Plaintiffs state they are now seeking the following remedial relief:

Plaintiffs request that this Court rule that until State agencies promulgate regulations in compliance with the Medicaid Act and the South Carolina Medical Practice Act that DDSN and DHHS must apply Social Security regulations related to the weight given to the opinions of the treating physicians in determining the need for Medicaid services.

(Pls.' Mem. Supp. Am. Mot. for Summ. J. Mot. at 26).  Citing *Doe II*, 419 Fed. Appx. 411,  Plaintiffs contends the court may do so under its broad equitable powers to style any appropriate remedial relief.  First, Plaintiffs did not seek this relief in their Amended Complaint and first raised this request for relief in their summary judgment motion. Moreover, the cases cited by Plaintiffs are distinguishable.  *Alexander v. Hil,* 707 F.2d 780, 783 (4th Cir. 1983), was a class action involving noncompliance with the court's prior orders, and *Smith v. Miller*, 665 F.2d 172 (7th Cir. 1981), was also a class action where the court held that the district court did not abuse its discretion by ordering that all requests for Medicaid benefits not timely processed under prior approval procedures were deemed automatically approved.  In these cases, the courts were enforcing compliance with prior court orders and the Medicaid Act.  Here, Plaintiffs have not established that the state is acting in derogation of any prior orders or the Medicaid Act in its treatment of treating physicians' opinions.

Supp. Am. Summ. J. Mot. at 27).

Finally, Plaintiffs are seeking an order requiring the restoration of all of their MR/RD waiver services which have been reduced or eliminated and prohibiting Defendants from reducing their MR/RD waiver services "by amendments to the State's Medicaid applications to CMS." (Am. Compl. ¶ 318). As discussed below, this request appears to apply only to Chip and Michelle, and their MR/RD waiver services were never actually reduced based upon the 2010 caps.[7] Plaintiffs Chip and Michelle filed an appeal of DHHS's administrative decision to reduce or discontinue certain MR/RD waiver services with the ALC.[8] On November 9, 2011, the ALC filed an order reversing the DHHS's decisions to reduce and or terminate services or supplies to these Plaintiffs. (Dkt. # 169 Defs.' Mem. Supp. Summ. J. Mot. Ex. 2 - ALC's Order of Nov. 9, 2011). The ALC held that the actions taken by the DHHS to reduce or cap Plaintiff's services did not have the force and effect of law because the caps were not promulgated as a regulation. *Id.* at 14. Further, the ALC ordered that the DHHS must provide each Plaintiff with an evidentiary hearing before taking any further action regarding Plaintiffs'

--------------------------------------------------

[7]Plaintiffs cite to the Report and Recommendation filed in this action on November 24, 2010, in regard to the temporary injunction (Dkt. # 71) as evidence that Chip and Michelle's service were reduced. (Dkt. # 175 - Pls.' Mem. Opp. Summ. Defs.' Summ. J. Mot. at 6). In her report, the Magistrate Judge stated that "there has been a diminution in service hours for both Chip and Michelle, which . . . their treating physicians find significant." *Id.* However, it appears that this particular sentence is a misstatement of the facts and Plaintiffs have not presented any evidence which establishes that the services for these Plaintiffs were ever reduced. More accurately, there was a threatened diminution in the services; however, the services were never actually reduced. Furthermore, the Magistrate Judge clearly recognized in her Report that the services provided to Michelle and Chip had never actually been reduced. (See e.g. Report at 23)(stating that "[w]ith an injunction, the defendants will only have to maintain the same level of funding they have provided to the plaintiffs for years and which, in the instance of Michelle M. and Chip W., they maintain even now.")

[8]The ALC consolidated four individual appeals because they concerned the same question of law. (Dkt. # 169-2 - ALC's Order of Nov. 9, 2011, at 2 n.1).

benefits under the MR/RD waiver.  *Id*. at 16.  DHHS did not appeal this order.  There is no ongoing violation of the Medicaid Act, Section 504, or the ADA, in regard to the Plaintiffs Chip and Michelle, and they are receiving the relief requested.  Accordingly, it appears their claims are moot.

In response, Plaintiffs argue that they are seeking systemic changes to force the DHHS into compliance with the ADA, Section 504, the Medicaid Act, and the holding in *Olmstead*.    (Dkt. # 175 - Pls.' Mem. Opp. Defs.' Summ. J. Mot. at 2).    Plaintiffs specifically state that the claims raised in their Amended Complaint are not limited to the January 1, 2010 reductions, but rather allege ongoing and systemic violations. Further, Plaintiffs note that they are requesting an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988, particularly in light of Defendants' claim that Plaintiffs have prevailed in this case.  (Dkt. # 175 - Pls.' Mem. Opp. Defs.' Summ. J. Mot. at 10).    Finally, Plaintiffs argue that their claims are not moot because Defendants' conduct can reasonably be expected to recur.  *Id*. at 12.[9]  Plaintiffs contend that "[c]ontinuing to apply illegal caps on every waiver participant who does not have a case pending in the federal court is not an appropriate remedy."  (Dkt. # 220 - Pls.' Mem. Opp. Summ. J. Mot. at 8).

While federal courts may provide prospective injunctive relief where a state is engaged in an ongoing violation of federal law, *see Edelman v. Jordan*, 415 U.S. 651, 664, 674 (1974), a federal court acting pursuant to the Declaratory Judgment Act may declare the rights of a party only where there exists an "actual controversy."  *Steffel v.*

---

[9]Furthermore, Plaintiffs contend that Defendants continue to enforce a cap of 240 hours per month on respite hours.  (Dkt. # 215 - Pl.s' Mem. Opp. Defs.' Summ. J. Mot. at 2).  Plaintiffs cite to Chip's affidavit in which he avers: "My service coordinator tells me that no one can go over 240 hours a month of respite care."  (Dkt. # 207-27 ¶3). These general allegations and the evidence cited by Plaintiffs as support are insufficient to create a genuine issue of material fact regarding whether Plaintiffs Chip and Michelle's services have been reduced.

*Thompson*, 415 U.S. 452, 462 (1974).[10]

Actions for declaratory or injunctive relief must present a live controversy justiciable under Article III of the Constitution. *See MedImmune, Inc. v. Genentech, Inc.*, ___ U.S. ___, 127 S.Ct. 764, 771, 166 L.Ed.2d 604 (2007) (declaratory judgment); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (injunctive relief). An actual, justiciable controversy must exist not only when the suit is initiated, but also at the time that the party's entitlement to the requested relief is decided. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969). It is further settled in this regard that a past injury, without more, cannot form the basis for either injunctive or declaratory relief. *See O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."); *see also Green v. Mansour*, 474 U.S. at 74 (rejecting the view that "declaratory judgments expressly adjudicating the question of past violations are routinely available").

To determine whether an "actual controversy" exists, the court must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy . . . to warrant the issuance of a declaratory judgment." *Golden*, 394 U.S. at 108 (*quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). A party seeking declaratory relief from a prospective violation of the party's rights must show that the grievance is real and immediate, rather than merely conjectural. *See Golden*,

---

[10]The Declaratory Judgment Act provides, in part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

394 U.S. at 109.

A claim is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence . . . ." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397(1980) (quotation omitted). Otherwise, a court's ruling would be an advisory opinion on hypothetical facts. *White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 167 (4th Cir. 1990) (internal quotation omitted).

A claim that is moot may be considered by the Court, however, if it is "capable of repetition, yet evading review." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). This exception is limited to exceptional situations. *See Incumaa v. Ozmint*, 507 F.3d 281, 289 (1983). "In the absence of a class action, the 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

First, as this is not a class action, it is insufficient as a matter of law for Plaintiffs to argue that the challenged conduct may recur as to others; it must be as to the same complaining party. *See Spencer v. Kemna*, 523 U.S. 1, 17 (1998). Second, simply because it is possible for DHHS to resume its challenged conduct does not create a reasonable expectation that it will. *See Am. Legion Post 7 v. City of Durham*, 239 F.3d 601, 605–06 (4th Cir. 2001) (finding moot a challenge to a repealed ordinance when, even though the government was "free to re-enact th[e] ordinance," there was no indication that it would). In fact, courts often give considerable credence to a

14

government's indication that it will not repeat the challenged conduct. *See, e.g., Chi. United Indus., Ltd. v. City of Chi.*, 445 F.3d 940, 947 (7th Cir. 2006) (holding "when the defendant is not a private citizen but a government actor, mere is a rebuttable presumption that the objectionable behavior will not recur . . . .'" (*quoting Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1283 (11th Cir. 2004)). *See also Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005) (per curiam) ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." (quotation omitted)).

There is no indication that in the future Defendants will apply the 2010 caps to Plaintiffs Michelle and Chip, especially in light of the ALC's decision.[11] In fact, Plaintiffs themselves have state that "DHHS is now prohibited by these orders from enforcing the January 1, 2010 caps on services of these two plaintiffs based on the decision of the Administrative Law Court." (Dkt. # 166 at 41).

Furthermore, Plaintiffs cannot demonstrate that Defendants' alleged wrongful

_____

[11]The court also believes the instant action is distinguishable from the recent Fourth Circuit Court of Appeals' decision in *Pashby v. Delia*, 2013 WL 791829 (4th Cir. filed March 5, 2013). In *Pashby*, a class action suit, Medicaid recipients contended that a specific new policy contravened the ADA, Section 504 of the Rehabilitation Act, and the Social Security Act by imposing stricter eligibility requirements for in-home services. They further alleged that they were not provided sufficient notice of the termination of their services in violation of their due process rights. The Fourth Circuit held that the class action claims were not moot based upon the voluntary dismissal of administrative appeals by the named plaintiffs and reinstatement of the services by the defendants because the behavior is likely to recur. *Id.* at *4. The court found that the defendants could reassess the recipients' needs at any time and cancel their services under the challenged policy. First, this is not a class action and, furthermore, Defendants are bound by the ALC's decision which reversed the decision to reduce and/or terminate Chip and Michelle's services. Dkt. # 207-30 at 16). Further, the ALC concluded that because the 2010 policy regarding caps was not promulgated as a regulation under state law, Plaintiffs were entitled to a hearing before their services could be reduced. *Id.* at 14.

conduct is capable of repetition, yet evading review simply by broadening the nature of the allegedly wrongful which is challenged. *Larsen v. United States Navy*, 2012 WL 3672985 (D.D.C. 2012)(holding wrong at issue for mootness purposes is limited to plaintiffs' theory alleged in complaint). *See also Clarke v. United States*, 915 F.2d 699, 703 (D.D.C. 1990)("where plaintiffs are resisting a mootness claim . . . they must be estopped to assert a broader notion of their injury than the one on which they originally sought relief.") [12]

Here, Plaintiffs Chip and Michelle in their Amended Complaint challenge the reductions which occurred based upon the 2010 caps. However, now Plaintiffs, in the absence of proper pleadings, seek to permanently prohibit *any* reduction in Plaintiffs' waiver services. (*See e.g.*, Dkt. # 175 - Pls.' Mem Opp. Summ. J. Mot. at 7). Based on the claims before the court, the court cannot prohibit DHHS from reducing these Plaintiffs' or other individual's MR/RD waiver services in the future. However, DHHS must provide the appropriate due process if any services are cut or terminated in the future. Furthermore, at this time, any presumption of future violations as to Chip and Michelle would be purely speculative making any opinion the court might render an advisory opinion.

Finally, Plaintiffs contend that the opinion in *Doe v. Kidd*, 501 S.E.2d 348, 355 (4th Cir. 2007) ("*Doe I*"), precludes finding Chip and Michelle's claims are moot. The court disagrees. In *Doe*, Doe challenged Appellee's failure to provide her with residential rehabilitation services promptly. Despite Appellees providing Doe with some services,

---

[12]Plaintiffs also contend that their request for attorney's fees pursuant to 42 U.S.C. §1988 renders their claims "live" especially in light of Defendants' admission that they are the prevailing party. (Dkt. # 175 - Pls.' Mem. Opp. Defs.' Summ. J. Mot. at 10). As the court finds at this time Peter's claims are not moot, the court need not address this issue.

the Fourth Circuit found this claim was not moot as there was an ongoing violation based upon Appellee's admission that Doe was placed in a CTHII for respite services or until her true status is determined. *Doe*, 501 S.E.2d at 354. The court specifically held that the appellees had not voluntarily ceased the wrongful conduct. *Id.*[13] Here, however, Chip and Michelle's services have not been reduced and the claims they raised in regard to the threatened reductions which were based upon the 2010 caps are no longer live.

Furthermore, Plaintiffs' argument that the challenges they are raising are systemic problems and being applied to other waiver participants, (Dkt. # 175 - Pls.' Mem. Opp. Summ. J. Mot. 8; Dkt. # 220 - Pls.' Mem. Opp. Summ. J. Mot. at 5, 8), does not render Chip and Michelle's claims live. While a class action may remain live despite the mootness of the claims of the class representative, *see e.g. Sosna v. Iowa*, 419 U.S. 393, 401 (1975)(holding when a class representative's claim is mooted after class certification, the Supreme Court has held that federal courts retain jurisdiction over the class action), this action is not a class action. In their Amended Complaint, Plaintiffs challenge only specific actions which were applied to them. While others may be subject to the same actions of Defendants, Plaintiffs may raise only their own claims. Absent a special relationship or class action, the Plaintiffs at the present time do not have standing to assert the rights of these third parties. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975)("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

Based on the foregoing, the court finds the claims of Chip and Michelle are moot.

---

[13]Contrary to Plaintiffs' assertions, the court did not hold that the claim was not moot because it could reasonably be expected to recur. (See Dkt. # 175 - Pls.' Mem. Opp. Defs.' Summ. Jud. Mot. at 12).

There is no genuine issue of material fact - the waiver services of Chip and Michelle have not been reduced. Moreover, any presumption of future violations in this case would be purely speculative at this time, making any opinion the court might render an advisory opinion.

While Peter's services have also not been reduced at this time, the claims raised by Peter remain live. The parties dispute whether Peter has requested a hearing, but it is undisputed that Peter has yet to have such a hearing on his claims. In an informal status report requested by the court, the parties represented that a hearing is currently scheduled in Peter's administrative action for March 12-13, 2013. (Dkt. # 230 at 1). However, in another action currently pending before the court, *Kobe v. Keck, et.al.*, Plaintiffs subsequently filed a letter dated February 26, 2013, addressed to the DHHS hearing officer in which DHHS stated that it had decided not to contest Peter's appeal and that a hearing was unnecessary. *Kobe v. Keck, et.al.*, C/A No.3:11-cv-1146-TMC Dkt. # 204 Ex. 10). At this time, it appears that Peter's claims are not moot.

However, the court finds some of Peter's claims are not yet ripe. The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99 (1977). The Supreme Court has enunciated two factors relevant to a ripeness decision: first, the fitness of the issues for judicial resolution, and second, the hardship to the parties of withholding court consideration. *Id*. at 149. "For a claim to be ripe, it must involve an administrative decision [that] has been formalized and its effects felt in a concrete way by the challenging parties." *Pashby*, 2013 WL 791829 * 5 (internal citations and quotation marks omitted). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may

18

not occur at all.'" *McGhee v. Director, Dept. of Mental Health & Hygiene*, 153 F.3d 721 (4th Cir. 1998) (unpublished)(internal quotation and citations omitted). Peter's appeal to the ALC is apparently still pending and the possibility remains that he will receive the relief he seeks. Thus, the injury of which he complains remains contingent upon future events.

"Federal ripeness doctrine . . . counsels against adjudication of questions that might be altered or dissolved by further action in the state court." *Id*. In McGhee, the Fourth Circuit remanded the action with instructions for the district court to stay the action pending resolution of the state proceedings. *Id*. The court noted that "[s]taying any decision pending final state court action is consistent with the dual federal-state nature of the Medicaid system and helps preserve the states' important role in administering the program." *Id*. The court finds a stay appropriate in this case as well. Accordingly, the court stays this action pending the resolution of the state proceedings.

## Conclusion

Based on the foregoing, Defendants' Summary Judgment Motion (Dkt. # 200) is **GRANTED in part and DENIED in part**; Defendants' Motion to Dismiss and/or for Summary Judgment Motion (Dkt. # 169) is **DENIED as moot**; and Plaintiffs' Amended Summary Judgment Motion is **DENIED** (Dkt. # 207). Plaintiffs Chip E. and Michelle M. are dismissed. Further, this action is stayed pending the resolution of the state proceedings.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
March 7, 2013