IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Peter B., Jimmy "Chip" E., ) | |
| and Michelle M., ) | |
| ) | C/A No. 6:10–767-TMC |
| Plaintiffs, ) | |
| ) | |
| v. ) | **OPINION & ORDER** |
| ) | |
| ) | |
| Beverly Buscemi, Kelly Floyd, ) | |
| the South Carolina Department ) | |
| of Health and Human Services, ) | |
| the South Carolina Department ) | |
| of Disabilities and Special ) | |
| Needs, Anthony Keck, and ) | |
| Richard Huntress, ) | |
| ) | |
| Defendants. ) | |
| _____  ) | |

This matter is before the court on the Motion to Dismiss filed by Defendants Beverly Buscemi, Kelly Floyd, Richard Huntress, Anthony Keck, South Carolina Department of Health and Human Services ("DHHS"), and the South Carolina Department of Disabilities and Special Needs ("DDSN") (ECF No. 256); and Plaintiff Peter B.'s Motion to Redact (ECF No. 280) and Motion to Withdraw and Bifurcate (ECF No. 286). Responses and replies have been filed in regard to these motions. (ECF Nos. 264, 277, 284, and 293). These motions are now ripe for ruling.[1]

**I. Background/Procedural History**

Plaintiff Peter B. (hereinafter referred to as "Plaintiff") is approximately 43 years old and has moderate mental retardation, hydrocephalus, diabetes, coronary heart disease, an anxiety

---

[1] The court decides these motions without a hearing as the parties' arguments are fully set forth and supported in the memoranda and exhibits accompanying their motions. *See* LR 7.08, D.S.C. (stating "[h]earings on motions may be ordered by the Court in its discretion.").

disorder, and a history of stress-induced seizures. (ECF No. 108, Am. Compl. ¶ 34). He participates in a Medicaid waiver program for persons with Mental Retardation/Related Disabilities ("MR/RD waiver"). (Am. Compl. ¶ 31).[2] Plaintiff alleges that Defendants have reduced or eliminated, or threatened to reduce or eliminate, the services which are provided to him under the MR/RD waiver program and that this diminution in services will force him into an institution in violation of *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).[3]

Prior to 2005, Plaintiff was receiving MR/RD waiver services, including 12 hours of one-on-one companion services. (Am. Compl. 36, 48). In 2005, Plaintiff was notified that his one-on-one companion services were being terminated. (Am. Compl. 50). Plaintiff appealed the final agency decision to DHHS and the hearing officer affirmed finding it lacked subject matter jurisdiction because Plaintiff had failed to establish that the companion services were necessary to keep him out of an institution, and therefore such services were not services covered by the Medicaid waiver. Plaintiff appealed to the Administrative Law Court ("ALC"), which also affirmed.

Plaintiff's one-on-one companion services continued through mid-2009 until the South Carolina Administrative Law Court's ("ALC") affirmance. In 2010, Plaintiff sought a preliminary injunction from this court to have the services restored during the pendency of this

---

[2]The terms "intellectual disability" and "person with intellectual disability" are being substituted in state law for "mental retardation" and "mentally retarded," respectively. (ECF No. 174). Thus, the reference to this waiver as MR/RD is in the process of being replaced by Intellectual Disabilities and Related Disabilities waiver or ID/RD waiver. 2011 South Carolina Laws Act No. 47 (eff. June 7, 2011). However, 42 U.S.C. § 1396n(c) and various other federal laws and regulations still use the nomenclature "mental retardation." The court will continue to use the MR/RD terminology which was in effect at the time this case was filed and was used by the parties in their pleadings and memoranda.

[3] In South Carolina, DHHS is the state agency designated to administer and supervise the Medicaid plan. S.C. Code Ann. § 44-6-30(1). DDSN provides services to individuals with head and spinal cord injuries and those with developmental disabilities, such as mental retardation and autism.

litigation and on March 7, 2011, United States District Judge J. Michelle Childs issued a preliminary injunction ordering that Plaintiff's services be restored to the quality, kind, and volume enjoyed by Plaintiff prior to July 2009. (ECF No. 95 at 7).

On August 20, 2011, the South Carolina Court of Appeals reversed the ALC's determination that the hearing officer lacked subject matter jurisdiction and remanded the action to DHHS for a hearing. *Brown v. S.C. Dept. of Health & Human Servs.*, 709 S.E.2d 701 (S.C. Ct. App. 2011). Stating that subject matter jurisdiction is determined by the question to be answered and not by the answer, the court held that because Plaintiff alleges his companion service is covered by Medicaid, DHHS had subject matter jurisdiction. *Brown,* 709 S.E.2d at 704. The court specifically stated it was not reaching the issue of whether companion services qualifies as a waiver. *Id.* at 705.

Before the remand hearing was held, Defendants moved for summary judgment in the instant action on the ground that Plaintiff's federal claims were not ripe for decision as there was no final decision by a state tribunal as of that time on the issue of whether the services should be provided. (ECF No. 200). The court agreed and stayed this action as to Plaintiff pending the resolution of the state proceedings. (ECF No. 231 at 19).[4]

On March 12, 2013, the hearing officer dismissed the case as moot after DHHS informed her that the agency was not going to contest the case on the merits. (ECF No. 241-1 at 4-9). Plaintiff appealed that order to the ALC, and on February 4, 2014, the ALC affirmed the hearing officer's decision. (ECF No. 247-1 at 2-9). Thereafter, Plaintiff's counsel filed a Notice of Appeal and a motion to be relieved as counsel with the South Carolina Court of Appeals. On April 28, 2014, the South Carolina Court of Appeals granted the motion to be relieved and informed Plaintiff that he had thirty days to obtain new counsel, or proceed pro se. (ECF No.

---

[4]The court found the claims of the other Plaintiffs Chip E. and Michelle M. were moot.

247-2 at 2).[5] Defendant SCDHHS filed a motion to dismiss on the grounds that the appeal is moot and Plaintiff failed to file an initial brief and the appeal. On October 10, 2014, in response to Plaintiff's claim that he never received the April 28th Order, the South Carolina Court of Appeals appointed an attorney for Plaintiff and directed him to file a memorandum addressing the mootness claims within thirty days. On December 3, 2014, Plaintiff's counsel filed a letter with the South Carolina Court of Appeals conceding the action was moot.

Here, Plaintiff seeks only declaratory and injunctive relief finding Defendants have violated the ADA, Section 504 of the Rehabilitation Act, and the Medicaid Act, prohibiting the Defendants from reducing MR/RD Medicaid waiver services, and requiring Defendants to restore all services which were reduced or eliminated. (Am. Compl. ¶¶ 316-318). Further, Plaintiff seeks an order requiring "Defendants to provide all home and community based services which are determined by participants' responsible treating physicians to be medically necessary, so long as the cost of these services is less than the cost of their care in a Regional Center, except where the orders of the treating physician involve Medicaid fraud or are outside of the reasonable standards of medical care, as determined by responsible and unbiased medical professionals." (Am. Compl. ¶ 319). Finally, Plaintiff seeks an order declaring that Defendants Keck, Floyd, Huntress, and Buscemi denied Plaintiff's civil rights in violation of 42 U.S.C. §§ 1983 and 1988. (Am. Compl. ¶ 321).

## II. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth

---

[5]In light of Peter B.'s disabilities, the court questions, but expresses no view, whether Peter B. could proceed pro se in the state court action.

specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Comm'n Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### III. Discussion

As set forth above, Plaintiff contends that Defendants have reduced his adult companion

services.  Defendants contend Plaintiff's claims have been rendered moot by the 2013 Order of the DHHS hearing officer.  Plaintiff argues that "according to [Plaintiff's] guardian, Carolyn Brown, [Plaintiff] has not received these one-on-one services since they were terminated in 2009."  (ECF No. 264 at 2).  Plaintiff now seeks an order requiring "Defendants provide twelve hours of 'Personal Care Attendant' services with an allowance for transportation costs."  (ECF No. 264 at 7). Plaintiff now also includes allegations that Defendants have purged their records which he alleges is a violation of his right to present evidence.  (ECF No. 264 at 9).

In a prior order, this court dismissed the claims of the other plaintiffs in this action finding them moot and stayed the action as to Plaintiff Peter B.'s claims while the action was pending in state court.  (ECF No. 231). Plaintiff Peter B. seeks to have his adult companion services restored.  (Am. Compl. ¶ 318).  As with the other Plaintiffs, that relief has now been granted and any presumption of future violations would be purely speculative making any opinion the court might render an advisory opinion.

A claim is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence . . . ." *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 397(1980) (quotation omitted). Otherwise, a court's ruling would be an advisory opinion on hypothetical facts. *White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 167 (4th Cir. 1990) (internal quotation omitted). A claim that is moot may be considered by the Court, however, if it is "capable of repetition, yet evading review." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). This exception is limited to exceptional situations. *See Incumaa v. Ozmint*, 507 F.3d 281, 289 (1983). "In the absence of a class action, the 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or

expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

The court discussed the issue of mootness in depth in its prior order. (ECF No. 231). Briefly, the court again notes the relief sought by Plaintiff in the Amended Complaint. Plaintiffs sought declaratory and injunctive relief finding Defendants violated the ADA, Section 504, and the Medicaid Act, prohibiting the Defendants from reducing MR/RD Medicaid waiver services, and requiring Defendants to restore all services which were reduced or eliminated. (Am. Compl. ¶¶ 316-318). Further, Plaintiffs sought an order requiring "Defendants to provide all home and community based services which are determined by participants' responsible treating physicians to be medically necessary, so long as the cost of these services is less than the cost of their care in a Regional Center, except where the orders of the treating physician involve Medicaid fraud or are outside of the reasonable standards of medical care, as determined by responsible and unbiased medical professionals." (Am. Compl. ¶ 319). Finally, Plaintiffs seek an order declaring that Defendants Keck, Floyd, Huntress, and Buscemi denied Plaintiffs' civil rights in violation of 42 U.S.C. §§ 1983 and 1988. (Am. Compl. ¶ 321). In its prior order, the court addressed the relief requested and ruled that Plaintiff's claims regarding his failure to receive a hearing was not moot and additionally that Plaintiff's claims were not ripe because his appeal to the ALC was still pending and the possibility remained that he would receive the relief he sought. (ECF No. 231).

Plaintiff argues that a state's administrative fair hearing process does not prevent a medicaid waiver participant from suing in federal court for violations of the Medicaid Act. The court is not saying anything to the contrary. The court is merely holding that Plaintiff has received the relief he sought in his Amended Complaint. And, to the extent that he is now seeking different relief, that claim is not before the court.

Plaintiff is now specifically seeking an order that Defendants provide him with a

Personal Care Attendant ("PCA").  Plaintiff contends that the only provider of one-on-one services in Spartanburg County is the Charles Lea Center, and the Charles Lea Center has refused to rehire Peter's long time one-on-one caregiver.  (ECF No. 264 at 6).[6]  Plaintiff therefore seeks PCA services which he argues "would be in keeping with the stated intent of Judge Childs' order, to restore [Plaintiff's] services to the amount kind and quality received prior to 2009."  (ECf No. 264 at 6).  The court disagrees.  It is undisputed Plaintiff was not receiving PCA services in 2009, and if he wishes to seek PCA services, rather than companion one-on-one services, he is free to do so.  But at this juncture, Plaintiff's claim in this action is now moot.  He

---

[6]Based upon this, Plaintiff contends that he is not receiving the one-on-one services as ordered by Judge Childs, and notes that Plaintiff's mother Carolyn Brown ("Brown") contends that he has not received these services since 2009.  (ECF No. 264 at 2). This issue has been previously raised in this action.  On June 13, 2011, Plaintiff filed a Motion to Compel Defendants to comply with the preliminary injunction ordered by Judge Childs. (ECF No. 114). Magistrate Judge Jacquelyn D. Austin denied the motion.  (ECF No. 132).  Plaintiff filed a motion for reconsideration (ECF No. 139), which Judge Austin denied. (ECF No. 155).  In her order, Judge Austin noted that Plaintiff

> alleged the services were not the same quality because Defendants refused to rehire Lee Knowles ("Knowles"), [Plaintiff's] long-time companion who was well trained in providing services to  [Plaintiff], and instead hired a "hodgepodge of poorly trained staff" to provide services.   [Plaintiff] alleged the services were "not the same kind because his prior companion services were provided by one individual who developed a close relationship with  [Plaintiff] while currently his services are provided by a 'parade of poorly trained employees of an agency that is hostile to  [Plaintiff's] guardian.'" Finally, "[Plaintiff] alleged the services were not the same amount because his prior services were provided on a consistent schedule and were over and above the services provided by regular Charles Lea Center staff."

(ECF No. 155 at 1-2) (citations to motion omitted).  Judge Austin also noted that, in their response to the motion to compel, Defendants averred, as Plaintiff now agrees, that the Charles Lea Center is the  only qualified provider of one-on-one services  in Spartanburg County, and the providers suggested by Plaintiff were not contractually qualified to provide services to the DDSN.  (ECF No. 155 at 2).  Plaintiff did not appeal Judge Austin's orders to the district court, and the court will not re-visit this issue.   *See* Fed.R.Civ.P.  72(a)(stating that a party may serve and file objections to a magistrate judge's order on non-dispositive matters within 14 days and "may not assign as error a defect in the order not timely objected to.").  Moreover, it appears that Plaintiff has now changed his argument and is seeking PCA services, rather than one-on-one services.

8

cannot avoid the mootness of his claim by declining the one-on-one services and demanding PCA services.

Plaintiff then contends that even if his wavier services had been restored, he has raised other issues which are not moot. (ECF No. 264 at 7). Specifically, Plaintiff contends that

> (1) the failure to comply with 42 C.F.R. 431.210 notice requirements of the Medicaid Act and this violation of federal law is subject to repetition, yet it has evaded review. Amended Complaint at 51, 91, 92, 93, 164, 177 and 290.
>
> (2) failing to provide comparable Medicaid services to Medicaid waiver participants as are available to the general public and to pay adequate rates to providers so that these services will be available to waiver participants. 42 U.S.C. 1396a(a)(30). Amended Complaint at 3 and 292.
>
> (3) failing to provide MR/RD (ID/RD) Medicaid waiver services in sufficient amount, duration and scope to meet the goals of the program. 42 U.S.C. 1396a(a)(10). *Moore v . Cook*, Civil Action File 1:07-CV-631 (N.D.Ga. April 19, 2012) Amended Complaint at 3, 200, 292.
>
> (4) failing to implement and employ reasonable standards in the administration of the Medicaid program. 42 U.S.C. 1396a(a)(17). Amended Complaint paragraphs 3, 7, 292, 294 and 315.
>
> (5) failing to give the greatest of deference to the treating physician in determining medical necessity, as required by *Olmstead v. L.C.*, 527 U.S. 581 (1999). Amended Complaint paragraphs 83, 217 and 315.
>
> 6) failing to inform waiver participants of all feasible alternatives under the waiver. 42 U.S.C. § 1396n(c)(2)(c). Amended Complaint at 3, 138 and 292.
>
> (7) failing to assure that the health and welfare of waiver participants is protected. 42 C.F.R. 431.302. Amended Complaint at 3, 7, 26, 200, 218, 237, 247, 292, 294 and 309.
>
> (8) violating the Medicaid Act by promoting the monopoly of the local DSN Boards and those private corporations which SCDDSN has historically treated as local DSN Boards, thereby reducing Plaintiffs' freedom of choice of providers. 42 U.S.C. § 1396a(a)(23). Amended Complaint at 3, 7, 139, 213, 221, 233, 292, 293, 294, 305.
>
> (9) violating the Americans with Disabilities Act by failing to meet the State's burden to prove that providing the services requested and making the systemic changes describe in the Amended Complaint would fundamentally alter the State's system and failing to make reasonable accommodations requested by the Plaintiffs. Amended Complaint at 2, 6, 8, 33, 126, 178, 185, 186, 214, 230, 248, 254, 259, 260, 264, 268, 270 and 313.

(10) violating Peter's rights under the Medicaid Act and the ADA by diverting funding, under the guise of "budget reductions" when the cost of the ID/RD program actually increased after caps were placed on services. Exhibits 3 and 4 demonstrate that the cost of the program increased by more than $50 million in 2010, when DHHS claimed to impose caps and reductions due to severe budget reductions. The per capita cost actually increased from approximately $37,000 per participant to more than $50,000 per participant, according to letters from CMS to the director of DHHS. Id.

(11) violating the Due Process Clause of the Fourteenth Amendment and the requirements of *Goldberg v. Kelly*, 397 U.S. 254 (1970) by denying Plaintiffs' right to a fair hearing meeting the requirements of 42 U.S.C. 1396a(a)(3), 42 C.F.R. § 431.205. Amended Complaint at 4, 6, 7, 229, 288, 289, 294, 302 and 307.

(12) violating the Supremacy Clause of the United States Constitution by implementing state agency policies which conflict with the clear requirements of the Medicaid Act and the United States Constitution. Amended Complaint at 6, 295 and 303.

(13) retaliating against Peter and the providers who have advocated for him by terminating, or attempting to terminate their certification as MR/RD Medicaid waiver providers, including Jackie Walker and Lennie Mullis, who had been identified as witnesses in this and other cases when Defendants terminated their certification to provide services. (Ms. Mullis' certification was subsequently restored after she brought a second administrative appeal in which the state tribunal again found that her certification was terminated in violation of her right to due process. Defendants quit paying Ms. Mullis for psychological services provided to Peter beginning in March of 2009 and refused to pay her for many months. Entry 166-10). Entries 220-8 at 20, 166-10, 175-4 at 22, 175-8 at 53 and 54. See also Entry 166-11 re families' fear of retaliation. Amended Complaint at 85 and 304.

(14) depriving Peter of due process property rights and attempting to deprive him of life, liberty and property in violation of the Fourteenth Amendment of the United States Constitution. Amended Complaint at 6, 302 and 307.

(ECF No. 251-1 at 5-7).[7] While Plaintiff might have raised other issues in the Amended Complaint, which have not been specifically addressed, reviewing these issues the court finds that resolution of these issues is not necessary in light of the relief Plaintiff sought in his Amended Complaint. The relief Plaintiff sought in the Amended Complaint (Am. Compl. ¶¶

---

[7]The court declines to consider Plaintiff's unsupported allegations that the record on appeal was purged.

315-321) has been addressed either in the court's prior or provided by Defendants, rendering his claims moot.

Plaintiff has filed a Motion to Redact seeking the redaction of apparently all the testimony and written documents provided by Plaintiff's mother, Brown, during the hearing held on July 10, 2014, on the ground that the they contain false and misleading information. (ECF No. 280). Defendants oppose the motion. (ECF No. 284). As the Defendants point out, the motion to redact violated Fed. R. Civ. P. 7(B)(1)(b), as it does not state with particularity why the testimony or information should be redacted. In the reply, Plaintiff contends that Brown has acknowledged that she has not paid $100,000.00 in legal fees, and no legal fees or costs have been paid in this federal litigation by anyone. Further, Plaintiff contends that other information Brown provided to the court does not accurately reflect the circumstances surrounding counsel's request to withdraw from representation in state court. (ECF No. 286 at 2).

The public has a strong interest in access to court documents. The Fourth Circuit has directed that prior to sealing judicial records, a district court must first determine the source of the public's right to access the judicial records: the common law or the First Amendment. *Stone v. Univ. of Md.*, 855 F.2d 178,180 (4th Cir. 1988). If the common law right of access to judicial records applies, there is a presumption of public access to judicial records, which can only be-rebutted if countervailing interests outweigh the public's interest in access. *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988). "Some of the factors to be weighed in the common law balancing test 'include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historic event; and whether the public already had access to the information contained in the records.' " *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004) (*quoting In re Knight Publ. Co.*, 743 F.2d 231, 235 (4th Cir. 1984)). Under the common law balancing test, some of the factors include

whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records. *Id.*

The right to access judicial records under the First Amendment has a more limited scope than the common law rights. The First Amendment right of access attaches if: (1) the place and process have historically been open to the press and general public; and (2) public access plays a significant positive role in the functioning of the particular process in question. *Hill v. Kenworth Truck Co.*, C/A No. 2:07-0223, 2008 WL 4058426, at *2 (S.D.W.Va. Aug. 26, 2008) (internal quotation marks and citations omitted). The party seeking to restrict access bears the burden of overcoming a First Amendment right to access claim and must present specific reasons to support restriction of access. *Id.* at *3.

Under either standard, Plaintiff's motion should be denied. Plaintiff's only asserted reason for seeking to redact is the allegations that the statements are untrue. Whether the declarations are true or false is not an issue before the court at this time and, in any event, is not a proper consideration in the analysis of a motion to seal. *See Doe v. JBF RAK, LLC*, 2014 WL 5286512 (D.Nev. 2014) ("If this were the standard, virtually any complaint that contains allegations that are embarrassing or damaging to the defendant's reputation could be sealed until the allegations are proven."). Moreover, as the Supreme Court has recognized, an "erroneous statement is inevitable in free debate, and . . . it must be protected if the freedoms of expression are to . . . survive." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (1964). *See also Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014). Accordingly, Plaintiff has not rebutted the presumption of the public's right to access of court records. Further, the court finds that the public's interest in access outweighs Plaintiff's interest in redacting the testimony and

12

documents.[8]  Therefore, the court denies Plaintiff's Motion to Redact.

After Defendants' Motion to Dismiss was fully briefed, Plaintiff's counsel and GAL filed a motion to withdraw as counsel and guardian, respectively, and bifurcate the claims of Plaintiff Chip E. from the claims of Plaintiff Peter B. (ECF No. 286).[9]  Defendants do not oppose the motion.  (ECF No. 293).  The court grants Plaintiff's Motion to Withdraw.  However, based on the court's ruling on the Motion to Dismiss, Plaintiff's Motion to Bifurcate (ECF No. 286) is denied as it is now moot.

Finally, the court notes that after the Motion to Withdraw was filed, Brown filed several documents with the court in an apparent attempt to represent Plaintiff's interests in this action. (ECF Nos. 290, 291, 292, 296, 298).  It is well settled that a pro se litigant may not represent another individual or entity in federal court, and a minor or incompetent plaintiff cannot proceed without counsel in a civil action.  *See  Myers v. Loudoun Cnty. Pub. Schools*, 418 F.3d 395, 401 (4th Cir. 2005) ("We therefore join the vast majority of our sister circuits in holding that non-attorney parents generally may not litigate the claims of their minor children in federal court."*). See also  Whitehurst v. Wal-Mart,* 306 F. App'x 446, 449 (11th Cir. 2008) ("[W]hile . . . [Fed.R.Civ.P.] 17 authorizes a conservator or guardian to sue on behalf of a minor child, . . .  a non-lawyer parent has no right to represent a child in an action in the child's name.")); *KLA v. Windham Se. Supervisory Union*, 348 F. App'x 604, 605-06 (2d Cir. 2009) ("Although litigants in federal court have a statutory right to act as their own counsel, 28 U.S.C. § 1654, the statute does not permit 'unlicensed laymen to represent anyone other than themselves.' That prohibition extends to non-lawyer parents seeking to represent their children, and the representation of

---

[8]More accurately, the interest appears to be that of Plaintiff's counsel, rather than Plaintiff.

[9]Plaintiffs informed the court that Plaintiff Michelle M. died April 18, 2014. (ECF No. 253 at 7).

13

incompetent adults." citations omitted)).[10]  The court specifically advises Brown that she cannot represent Plaintiff in this or any future litigation.[11]

## Conclusion

Based on the foregoing, Defendants' Motion to Dismiss (ECF No. 256) is **GRANTED**; Plaintiff's Motion to Withdraw and Bifurcate (ECF No. 286) is **GRANTED in part and DENIED in part**; and Plaintiff's Motion to Redact is **DENIED** (ECF 280).

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
December 10, 2014

---

[10] The court notes that "[o]rdinarily, a court will not consider pro se submissions from a party represented by counsel." *Non-Punitive Segregation Inmates of Holmesburg Prison v. Kelly*, 589 F.Supp. 1330 (E.D.Pa.1984), aff'd, 845 F.2d 1014 (3d Cir.1988). *See also In re Moody*, 105 B.R. 368, 373 (S.D.Tex.1989) (all papers filed by the party while he was represented by counsel were stricken by the court because a party appearing "by counsel has no right to personally conduct, or assist counsel in conducting, the litigation of his case.").

[11] The motion does not include the requirements set forth in the local rule, L.R. 83.I.07, D.S.C. However, the mailing address and phone number of Plaintiff's guardian, Brown, are of record, and clearly base upon brown's filings with the court, Brown has received notice of the motion. Additionally, through this order, the court has informed Brown that she may not proceed without counsel as she cannot represent Plaintiff. Supra at 13. Further, the court also notes that, while it appreciates Brown's desire to assist her son, the court has not considered Brown's filings in ruling on the above motions. Plaintiff's counsel fully briefed the motion to dismiss prior to moving to be relieved.